IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SYCAMORE IP HOLDINGS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:16-CV-588-WCB |
| | § | LEAD CASE |
| AT&T CORP., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Level 3 Communications LLC has filed a Motion for Leave to File Second Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff Sycamore's Complaint, Dkt. No. 129. Defendants AT&T Corporation; AT&T Services, Inc.; Teleport Communications America, LLC; Verizon Business Global, LLC; and Verizon Services Corporation then filed AT&T and Verizon's Motion for Leave to File Second Amended Answers, Dkt. No. 139. The motions are GRANTED.

## BACKGROUND

Level 3 Communications seeks leave to amend its answer in order to assert an affirmative defense and a counterclaim of inequitable conduct on the part of plaintiff Sycamore IP Holdings LLC. The other moving defendants merely incorporate Level 3's briefing in their motion. Sycamore's response to the other moving defendants simply points to its briefing regarding Level 3's motion.[1] For those reasons, the Court addresses herein the papers regarding Level 3's

---

[1] The other moving defendants point to one additional fact in support of their inequitable conduct allegation. See Dkt. No. 139, at 1 ("In addition to the facts alleged in Level 3's Amended Answer, the pleadings of the Moving Parties further show that Sycamore IP has

1

motion, and the Court decides both Level 3's and the other moving defendants' motions on the same grounds.

The underlying inequitable conduct claim that Level 3 Communications seeks to raise is based on the fact that Sycamore asserted "small entity status" at the time it paid a maintenance fee for the patent in suit, U.S. Patent No. 6,952,405 ("the '405 patent") in March 2017. The maintenance fee that Sycamore paid as a small entity was $3700; if Sycamore had not claimed small entity status, the maintenance fee would have been twice that much, or $7400. Level 3 contends that Sycamore's managing member, Dr. Kai Zhu, knowingly engaged in fraudulent conduct by claiming small entity status for Sycamore when he knew Sycamore was not entitled to that status. The legal consequence of Sycamore's fraudulent conduct in asserting small entity status before the Patent and Trademark Office, according to Level 3, is that Sycamore is guilty of fraud under 37 C.F.R. § 1.27, and has committed inequitable conduct that renders the '405 patent unenforceable.[2]

---

improperly asserted 'small entity' status in paying maintenance fees for at least eight other patents in its portfolio, avoiding payment of over $30,000 in maintenance fees."). The Court does not address that additional support provided by the other moving defendants, because the Court has determined that Level 3 has put forth sufficient support for its motion to amend—i.e., the other moving defendants' additional support is not necessary at this point to show that leave to amend is warranted.

[2] In its proposed amended answer and counterclaims, Level 3 asserts that Sycamore's inequitable conduct entitles Level 3 to a declaratory judgment of "Invalidity and/or Unenforceability for Fraud on the USPTO," Dkt. No. 131, at 32; see also id. at 14, 36; and in its motion, Level 3 asserts that Sycamore's inequitable conduct "renders the patent-in-suit invalid and/or unenforceable," Dkt. No. 129, at 1. It has long been settled, however, that a finding of inequitable conduct results in rendering the patent in question unenforceable; it does not render the claims of the patent invalid. Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1329 (Fed. Cir. 2004) ("Misleading statements by patent applicants, if intentionally made and material to patentability, can produce unenforceability, not invalidity."); Kingsdown Med. Consultants Ltd. v. Hollister, Inc., 863 F.2d 867 (Fed. Cir. 1988) (en banc); Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572, 1578 (Fed. Cir. 1985) ("the inequitable conduct defense 'results in unenforceability,' not invalidity") (quoting J.P. Stevens & Co. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1560 (Fed. Cir. 1984). The Court will therefore disregard Level 3's references to

Sycamore responds that it paid the maintenance fee on the '405 patent in March 2017 based on "small entity" status because that is the way its fees had been calculated in the past. Sycamore asserts that it "did not occur to Sycamore that it no longer qualified for 'small entity' status as a result of recent licenses that it entered into." Dkt. No. 133, at 1. Accordingly, Sycamore asserts that Level 3's proposed inequitable conduct defense is baseless and implausible, and that Level 3's motion to amend should be denied for that reason.

## DISCUSSION

After a scheduling order has been entered and a deadline has been set for filing amended pleadings, as in this case, the decision whether to permit a post-deadline amendment is governed by Fed. R. Civ. P. 16(b). See Squyres v. Heico Companies, L.L.C., 782 F.3d 224, 237 (5th Cir. 2015); EEOC v. Serv. Temps Inc., 679 F.3d 323, 333-34 (5th Cir. 2012); L.G. Motorsports, Inc. v. NGMCO, Inc., No. 4:11-cv-112, 2013 WL 2543398, at *6 (E.D. Tex. June 6, 2013). Under Rule 16(b)(4), Fed. R. Civ. P., a motion to modify the scheduling order by permitting the filing of an amended pleading after the deadline in the scheduling order may be granted "only for good cause and with the judge's consent."

The party seeking to modify a scheduling order has the burden to show good cause. Squyres, 782 F.3d at 237; Self v. Quinn's Rental Servs. (USA), LLC, No. H-15-1569, 2016 WL 6835093, at *1 (S.D. Tex. Nov. 21, 2016). Moreover, the Fifth Circuit has held that Rule 16 gives trial courts "broad discretion to preserve the integrity and purpose of the pretrial order." Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990) (quoting Hodges v. United States, 597 F.2d 1014, 1018 (5th Cir. 1979)). The circuit court has directed that in deciding whether to

---

invalidity as inapposite. For that same reason, the Court will disregard the other moving defendants' references to invalidity in the context of inequitable conduct. See Dkt. No. 140, at 9, 20, 29, 41; Dkt. No. 141, at 8, 20.

permit amendments to the pleadings after the deadline for such amendments, district courts should consider "(1) the explanation for the party's failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." United States ex rel. Bias v. Tangipahoa Parish Sch. Bd., 816 F.3d 315, 328 (5th Cir. 2016) (quoting S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A., 315 F.3d 533, 536 (5th Cir. 2003) (alterations in original)); Filgueira v. U.S. Bank Nat'l Ass'n, 734 F.3d 420, 422 (5th Cir. 2013); Ciena Corp. v. Nortel Networks, Inc., 233 F.R.D. 493, 494 (E.D. Tex. 2006).

In this case, three of those factors are readily disposed of. First, the explanation for the failure to move for leave to amend within the time allotted in the docket control order is persuasive: the event that gave rise to Level 3's motion—Sycamore's maintenance payment as a small entity—did not occur until March 2017, so it would not have been possible for Level 3 to file its amended answer and counterclaims before that. Second, there is no demonstrated prejudice to Sycamore from the delay; the evidence needed to respond to Level 3's inequitable conduct allegations appears to be fully available to Sycamore, and not to have been compromised by the passage of time. Third, in light of Level 3's assertion that it needs no more discovery on the inequitable conduct claim (and in the absence of any suggestion by Sycamore that it needs any discovery on that claim), there is no risk of postponing the trial on account of the allegations in the amended answer and counterclaim.[3] Given the parties' position that further factual development is not needed, it may be that the issue will be amenable to resolution on summary judgment. And, in any event, because inequitable conduct is an equitable claim triable

---

[3] During the telephonic hearing on the motions held on August 8, 2017, the other moving defendants similarly asserted that they did not require additional discovery.

to the court, not to a jury, evidence pertaining to inequitable conduct can be taken at any time and need not be taken at the time of the jury trial.

That leaves the issue of the importance of the amendment. Level 3 argues that allowing it to amend its answer is of critical importance because the defense of inequitable conduct, if successful, would dispose of this case in Level 3's favor. Of course, it is typically the case that success on the defense of inequitable conduct ends a patent infringement action. See Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1384 (Fed. Cir. 2006). But that is not to say that an amendment raising such a defense must invariably be regarded as important. What is called for in determining the importance of the amendment is not just an assessment of the theoretical effect of success on the defense being asserted, but a pragmatic judgment as to the likelihood that the newly asserted defense will succeed. See Filgueira, 734 F.3d at 423 ("Filgueira fails to show the importance of his amendment" because "it would not have changed the outcome of the court's ruling" on the motion to dismiss.); Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 547 (5th Cir. 2003) (treating "likely failure of the proposed counterclaims on the merits" as a factor weighing against allowing untimely amendment); see also Bombardier Aerospace Corp. v. United States, 831 F.3d 268, 284 (5th Cir. 2016) (futility of amendment supports decision to deny motion to amend); Tangipahoa Parish Sch. Bd., 816 F.3d at 328 (same); Nourison Rug Corp. v. Parvisian, 535 F.3d 295, 299 (4th Cir. 2008) (same).

Level 3's contention is that Sycamore engaged in inequitable conduct and rendered its patent unenforceable because in March 2017, long after the prosecution and issuance of the patent and well after the institution of this lawsuit, Sycamore asserted "small entity" status and, as a result, paid a maintenance fee on the '405 patent that was $3700 less than it otherwise would have paid. Those facts do not fit the typical pattern of an inequitable conduct claim, which

ordinarily requires an intentional misrepresentation or omission during the patent prosecution that materially affects the examiner's patentability decision.

In particular, the Federal Circuit has held that in order to prevail on an inequitable conduct claim, the movant ordinarily must prove that "information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." Outside the Box Innovations, LLC v. Travel Caddy, Inc., 695 F.3d 1285, 1290 (Fed. Cir. 2012). In Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc), the court emphasized that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." That is, in a case involving the failure to disclose a pertinent prior art reference, the court will find the alleged inequitable conduct to be material only if the PTO would not have allowed the claim if it had been aware of the undisclosed reference. Id.

Under the ordinary standard of but-for materiality adopted in Therasense, it is difficult to see why the failure to pay the proper maintenance fee, long after the issuance of the patent, was material to the PTO's issuance of the patent. See Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., 731 F.3d 1239, 1243-44 (Fed. Cir. 2013) (in reversing grant of summary judgment of inequitable conduct based on late payment of maintenance fees, noting that late payment is a "matter[] unrelated to the substantive criteria of patentability," and that "[w]e have recogniz[ed] an 'unwillingness to extinguish the statutory presumption of invalidity' where the patentee's conduct 'did not affect the issuance of the patent.'") (quoting Therasense, 649 F.3d at 1291). To be sure, the court in Therasense ruled that the ordinary requirement of materiality for a showing of inequitable conduct would not apply to a claim of egregious misconduct akin to the traditional defense of unclean hands. See Therasense, 649 F.3d at 1292-93. Yet it is open to

6

question whether the erroneous invocation of small entity status for purposes of paying a reduced maintenance fee would qualify as egregious misconduct sufficient to satisfy the high standard for unclean hands and thus trigger the remedy of unenforceability for inequitable conduct.

While it is open to question whether the conduct alleged in Level 3's motion would qualify as material under the analysis employed by the Federal Circuit in Therasense or would rise to the level of egregiousness necessary to support a defense of unclean hands, there is nonetheless case law support for Level 3's legal theory, at least in cases decided before Therasense. In a pre-Therasense line of cases, the Federal Circuit held that falsely claiming small entity status can constitute inequitable conduct if the requisite intent to deceive the PTO is shown. See Nilssen v. Osram Sylvania, Inc., 504 F.3d 1223, 1231 (Fed. Cir. 2007); Ulead Systems, Inc. v. Lex Computer & Management Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003); see also Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V., 528 F.3d 1365, 1375 (Fed. Cir. 2008); DH Tech., Inc. v. Synergystex Int'l, Inc., 154 F.3d 1333, 1343 (Fed. Cir. 1998) (remanding for determination whether patentee fraudulently established its status as a small entity or fraudulently paid the small entity fee). Because those cases have not been specifically repudiated by the Federal Circuit in the aftermath of Therasense, the Court regards it as unsettled whether those cases are still good law, at least under the "unclean hands" branch of the en banc majority opinion in Therasense. Under that line of authority, the question before the Court is whether Level 3 will be able to show that Sycamore acted with deceptive intent when it paid the March 2017 maintenance fee as a small entity and whether Sycamore's conduct is sufficiently egregious to trigger the "unclean hands" doctrine, as described in the pertinent portion of the Federal Circuit's Therasense decision.

For purposes of the Court's decision at this preliminary stage, the materials submitted in connection with the motion to amend and the response to that motion do not conclusively resolve that factual question. Because Level 3's legal theory has support in Federal Circuit cases and because Level 3 has validly pleaded the factual issue of fraudulent intent on the part of Sycamore's managing member, Dr. Zhu, the Court will allow Level 3 to amend its answer and counterclaim to add the defense and counterclaim of inequitable conduct based on Sycamore's payment of the March 2017 maintenance fee as the '405 patent as a small entity. For the same reasons, the Court will allow the other moving defendants' to similarly amend their answers. The motions to amend are therefore granted.

IT IS SO ORDERED.

SIGNED this 8th day of August, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE