# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SYCAMORE IP HOLDINGS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:16-CV-588-WCB |
| | § | LEAD CASE |
| AT&T CORP., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is AT&T's motion to strike Sycamore's doctrine of equivalents theories from the expert report of Sycamore's liability expert, Dr. Nettles, and to preclude Sycamore from presenting those theories at trial. Dkt. Nos. 157, 168. The motion is GRANTED.

## BACKGROUND

Sycamore filed the present action on June 6, 2016, alleging infringement of U.S. Patent No. 6,952, 405 ("the '405 Patent"). On September 12, 2016, Sycamore served its disclosures pursuant to Local Patent Rule 3-1, which requires a party claiming patent infringement to describe its allegations in reasonable detail, including "[w]hether each element of each asserted claim is to be literally present or present under the doctrine of equivalents." P.R. 3-1(d). In its disclosures, Sycamore stated the following regarding the doctrine of equivalents:

> Sycamore asserts that, under the proper construction of the Asserted Claims and their claim terms, every limitation of each of the Asserted Claims is literally satisfied . . . . To the extent that any limitation is found to be not present literally, Sycamore asserts that such limitation is present under the doctrine of equivalents. At present, Sycamore lacks knowledge as to which, if any, limitations of the asserted claims Defendants believe are not literally satisfied by the Accused Instrumentalities and, hence, as to whether Sycamore will be contending that any limitations of the Asserted Claims (and, if so, which ones) are satisfied by the Accused Instrumentalities under the doctrine of equivalents. Moreover, pursuant to Local Patent Rule 3-6, Sycamore reserves the right to amend its infringement

> contentions to specifically assert infringement by the doctrine of equivalents in light of the Court's claim construction.

Dkt. No. 168-1, at 4.

Local Patent Rule 3-6 states that a party's infringement contentions "shall be deemed to be that party's final contentions," with two exceptions. First, the Rule allows a party to amend its infringement contentions as of right within 30 days of the Court's claim construction ruling if the party believes in good faith that the claim construction ruling so requires. P.R. 3-6(a)(1). Second, the Rule provides that at any other time an amendment can be made "only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). The Court issued its claim construction order on March 16, 2017. Dkt. No. 110. Sycamore was therefore entitled to amend its infringement contentions without leave of the Court until April 17, 2017. It did not do so.

On March 28, 2017, AT&T served a supplemental response to Sycamore's interrogatories that set forth a number of AT&T's noninfringement positions. On June 6, 2017, Sycamore served a response to an interrogatory that, for the first time, described in detail Sycamore's doctrine of equivalents theories. Dkt. No. 168-4. By email to Sycamore dated June 26, 2017, AT&T stated its position that raising a doctrine of equivalents theory for the first time in an interrogatory response was "an improper attempt to circumvent the Court's rules for amending infringement contentions." Dkt. No. 168-5, at 4. Sycamore responded by email on July 12, 2017, stating that "since June 6, 2017 AT&T[] has been on notice of Sycamore's [doctrine of equivalents] positions with respect to the non-infringement arguments from AT&T's March 28, 2017 interrogatory response. Sycamore incorporates the [doctrine of equivalents] positions from its June 6, 2017 interrogatory response into its infringement contentions." Dkt. No. 168-6. AT&T replied on July 17, 2017, again stating that Sycamore was required to seek

leave of court and to show "good cause" to amend its infringement contentions. Dkt. No. 168-7. Even as of this date, Sycamore has not sought leave of court to amend its infringement contentions, but has doggedly persisted in its apparent position that no such leave of court is required.

**DISCUSSION**

Courts in this district apply a non-exclusive list of factors when considering whether to grant leave of court permitting a party to amend its infringement contentions or to exclude evidence based on a party's failure to comply with the Local Patent Rules. Those factors are: (1) the length of the delay and its potential impact on judicial proceedings; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent; (4) the importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and (5) the danger of unfair prejudice to the non-movant. Allure Energy, Inc. v. Nest Labs, Inc., 84 F. Supp. 3d 538, 541 (E.D. Tex. 2015); Tyco Healthcare Grp. LP v. Applied Med. Res. Corp., No. 9:06-cv-151, 2009 WL 5842062, at *2 (E.D. Tex. Mar. 30, 2009); Computer Acceleration Corp. v. Microsoft Corp., 481 F. Supp. 2d 620, 625 (E.D. Tex. 2007); see also Anascape, Ltd. v. Microsoft Corp., No. 9:06-cv-158, 2008 WL 7180756, at *2-3 (E.D. Tex. May 1, 2008) (same principles applicable to whether to strike, or permit amendment of, invalidity contentions).

AT&T begins by pointing out that Sycamore filed its original infringement contentions in September 2016, but delayed nine months before disclosing its doctrine of equivalents theories to

AT&T in June 2017. Sycamore responds that it was not aware of AT&T's theory of non-infringement until AT&T's response to Sycamore's interrogatories on March 28, 2017, so the sixth month period between September 2016 and March 2017 should not be charged to Sycamore as an unjustified period of delay.

Because Sycamore had sued the defendants in this case and previous cases based on their practice of certain industry-wide optical network standards, AT&T argues that Sycamore had every reason to know, even before March 2017, whether it might need to invoke the doctrine of equivalents as part of its proof that practicing those standards infringed Sycamore's patent. While there is force to AT&T's point, the Court will assume that the March 28, 2017, interrogatory responses at least brought into clearer focus for Sycamore the need to assert its doctrine of equivalents theories as alternative grounds for liability. The Court will therefore focus on the period beginning in March 2017.

After AT&T served its supplemental response to Sycamore's interrogatories on March 28, 2017, Sycamore had three weeks within which it could have amended its infringement contentions without needing to seek leave of court, if it believed the amendment was required by the Court's claim construction. In any event, Sycamore could have promptly moved for leave to amend its infringement contentions at that time. However, Sycamore waited more than two months after AT&T's interrogatory response to assert its doctrine of equivalents theory, and even then it did not do so in the method prescribed by the Local Rules, that is, by moving to amend its infringement contentions and making a showing of good cause for the delay. Sycamore has offered no explanation for its delay or its failure to use the proper procedure of moving to amend its infringement contentions.

A delay of several months has been found to weigh against a party's request for leave to file amended infringement contentions, particularly where, as here, the party has provided no justification for the delay. See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1367 (Fed. Cir. 2006). Sycamore's delay from March to June is not trivial, as the parties were in the midst of fact discovery, which concluded in July. Nonetheless, even in June 2017, Sycamore could have sought leave of court to amend its infringement contentions upon making a showing of good cause for its delay, but it did not do so. Indeed, it has still not done so.

Had Sycamore moved for leave to amend its infringement when it received AT&T's noninfringement contentions in March 2017, or even in June 2017, when it served its interrogatory responses regarding its doctrine of equivalents theories, the matter could have been resolved promptly. However, Sycamore's adamant refusal to move for leave to amend its infringement contentions, despite clear warnings from AT&T that it was required to do so, led to the further delay entailed in the filing and briefing of this motion. In the meantime, discovery proceedings have been substantially completed and the case has proceeded to the motions stage. Expert discovery was scheduled to finish on September 29, 2017, Dkt. No. 121, at 2, and Sycamore's expert, Dr. Nettles, was scheduled to be deposed that day, Dkt. No. 161, at 2. If Sycamore were now to formally seek leave to amend its infringement contentions, or if the Court were to treat its briefs on the present motion as implicitly seeking leave to amend its infringement contentions and were to find good cause for the delay, the Court would likely have to reopen discovery and possibly conduct a second round of claim construction, which could threaten the February 2018 trial date and considerably delay the proceedings.

The Court concludes that Sycamore has not acted with diligence. Sycamore argues that it was diligent because it "disclosed its responsive doctrine of equivalents position in a timely

fashion" in its initial infringement contentions. Dkt. No. 159, at 8. But that is not so. Courts in this district have been clear that doctrine of equivalents theories must be laid out in detail in a party's infringement contentions and that the type of boilerplate allegations contained in Sycamore's infringement contentions are insufficient. See Godo Kaisha IP Bridge 1 v. Broadcom Ltd., No. 2:16-cv-134, 2017 WL 2869331, at *2 (E.D. Tex. Apr. 27, 2017) (rejecting plaintiff's argument that its "boilerplate reservation [of the doctrine of equivalents] provides adequate notice under the Local Rules in this case"); Eolas Techs. Inc. v. Amazon.com, Inc., No. 6:15-cv-01038, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016) (striking "boilerplate" doctrine of equivalents infringement contention that stated that the defendants "infringed under the doctrine of equivalents because the difference between the claimed inventions and Defendants' infringement, if any, are insubstantial and the accused instrumentalities perform the same function in the same way to achieve the same result as such limitations," and holding that "Plaintiff's boilerplate language also does not reserve any special right for Plaintiff to assert DOE contentions at a time of its choosing"); see also Biscotti Inc. v. Microsoft Corp., No. 2:13-cv-1015, 2017 WL 2267283, at *4 (E.D. Tex. May 24, 2017) (ruling that infringement contentions that identify specific elements that are satisfied under the doctrine of equivalents are sufficient to survive a motion to strike, but that "blanket or boilerplate statement (not tied to any particular claim element) such as 'any element not literally met is met by the doctrine of equivalents'" is not). Sycamore's reference to the doctrine of equivalents in its original infringement allegations was nothing but a placeholder. Sycamore stated: "To the extent that any limitation is found to be not present literally, Sycamore asserts that such limitation is present under the doctrine of equivalents" and that "At present, Sycamore lacks knowledge . . . as to whether Sycamore will be contending that any limitations . . . are satisfied" under the doctrine of

equivalents. Dkt. No. 195-1, at 4. Under the decisions of courts in this district, that boilerplate recitation was plainly insufficient.

In its briefs, Sycamore never grapples with the problem that it has failed—even to this day—to seek leave of court to amend its infringement contentions. Sycamore's argument, instead, is that by informing AT&T of its doctrine of equivalents theories through its interrogatory answers and in a subsequent email, it effectively amended its infringement contentions. Dkt. No. 170, at 3, 7. But the Local Patent Rules require new theories of infringement to be presented in infringement contentions, not in emails or interrogatory responses. More importantly, the Rules provide that a belated effort to amend infringement contentions, as here, requires leave of court, which in turn requires a showing of good cause. Sycamore has sought to bypass not only the formal step of amending its infringement contentions, but also the leave-of-court requirement and the requisite good-cause showing. The Court declines Sycamore's request that it condone that sort of casual, self-help approach to compliance with the clear rules of the court governing pretrial disclosure.

The only case that Sycamore cites as support for its position, is Realtime Data, LLC v. Actian Corp., No. 6:15-cv-463, 2016 WL 9340797 (E.D. Tex. Aug. 11, 2016), but that case is not helpful to Sycamore. As explained in Realtime Data, the Local Patent Rules require that the parties prepare infringement contentions to ensure that they "formulate, test, and crystalize their infringement theories" early in the case, so that "the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond." Id. at *2 (quoting Connectel, LLC v. Cisco Systems, Inc., 391 F. Supp. 526, 527-28 (E.D. Tex. 2005)); see also Realtime Data, LLC v. Morgan Stanley, 554 F. App'x 923, 937 (Fed. Cir. 2017) (upholding district court's decision

striking Realtime's assertion of infringement under the doctrine of equivalents for failure to comply with the local rules of both the Eastern District of Texas and the Southern District of New York).

In the Realtime Data action in this district, the plaintiff submitted interrogatories seeking information about the defendants' theories of noninfringement. After obtaining the substantive responses to its interrogatories, the plaintiff promptly moved to amend its infringement contentions to add a doctrine of equivalents theory. 2016 WL 9340797, at *3. The court concluded that the motion to amend the infringement contentions was timely and that the plaintiff had shown good cause for the amendment. The plaintiff in Realtime Data thus followed the procedure set forth in the Local Rules for amending infringement contentions and acted promptly upon determining the need to make the amendments. Nothing in the Realtime Data case condones untimely amendments to a party's infringement conventions without leave of the Court, much less the failure to move to amend infringement contentions altogether.

As for Sycamore's claim that it would be seriously prejudiced by being denied the opportunity to pursue its doctrine of equivalents theories, the Court is skeptical, in part because of the way this case has been litigated to date. The present consolidated cases are only the most recent in a series of cases that Sycamore has brought against a number of defendants alleging infringement of the same patent, based on the defendants' practice of the same optical network standards. Yet in those previous cases, and in the early stages of this case, it appears that Sycamore was content to rely on a theory of literal infringement, as evidenced by its inclusion of only a short, boilerplate reference to the doctrine of equivalents in its infringement contentions. Even now, Sycamore does not appear to be asserting the doctrine of equivalents against the other defendants, CenturyLink, Verizon, or Level 3. Moreover, Sycamore has stated that it will

continue to pursue its literal infringement claim against AT&T, and that it believes it is "highly unlikely" that AT&T's noninfringement arguments will be successful. Dkt. No. 168-6. Dr. Nettles' report indicates that he is "not persuaded" by AT&T's noninfringement arguments and that they "do not change [his] position that AT&T . . . literally infringes" the '405 Patent. Dkt. No. 168-8 ¶ 55.

While those statements may simply constitute puffing, one of the risks of puffing is that a court will take the party at its word. In any event, at most the doctrine of equivalents theory is only a back-up theory of liability against AT&T, and a theory that emerged late in the development of the case. Thus, it appears that striking the doctrine of equivalents portion of Dr. Nettles' expert opinion will not have the effect of gutting Sycamore's case against AT&T. See Biscotti, 2017 WL 2267283, at *4 (striking belatedly disclosed new theory: "Biscotti's new theory does not seem critically important because . . . [the new theory] is supplemental to Biscotti's original basis for infringement"). The Court therefore finds that Sycamore has failed to make a persuasive showing that striking its doctrine of equivalents claim would result in unfair prejudice.

On the other hand, AT&T points to prejudice that it would suffer from the denial of the motion to strike, which would in effect allow Sycamore to amend its infringement contentions without a request for the Court to do so. The prejudice to AT&T is the prejudice that typically flows from allowing an opposing party to disregard pretrial timing requirements—the party's loss of an opportunity to use discovery to explore the opposing party's theories and the loss of time to develop responses to those theories. The Local Patent Rules directed to infringement contentions are designed to ensure that defendants are given full and timely notice of the allegations against them, and that after the period for filing infringement contentions has passed,

amendments to those contentions are permitted only on a showing of good cause. To allow the addition of new theories of liability relatively late in the case, as Sycamore requests, typically results in at least some prejudice to the opposing side, particularly in this case such as this one in which the new issue is raised near the close of discovery. See Tech Pharmacy Servs., LLC v. Alixa Rx LLC, No. 4:15-cv-766, 2017 WL 3283325, at *4 (E.D. Tex. Aug. 2, 2017) ("[The] Local Patent Rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'" (quoting Computer Acceleration Corp. v. Microsoft Corp., 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007))).

Beyond that, AT&T argues that if it had been on notice of Sycamore's doctrine of equivalents theories, it would have sought to have the Court construe additional claim terms. For example, AT&T points to Sycamore's theory that, under the doctrine of equivalents, the term "encoded information stream" can include "data indicators for multiple information groups along with the associated data words," as asserted by Dr. Nettles. See Dkt. No. 168, at 11. AT&T argues that Dr. Nettles' doctrine of equivalents theory is based on a "tortured interpretation" of the term "encoded information stream," and that if AT&T had had notice of that doctrine of equivalents theory, it would have sought a construction of that term that would have foreclosed, or at least restricted, Sycamore's ability to argue the doctrine of equivalents based on that term.

AT&T has a point. While the availability of the doctrine of equivalents, by its nature, does not turn directly on issues of claim construction, there is no question that claim construction can affect the scope of the doctrine as it applies to particular cases. Nor is there any doubt that an accused infringer deciding which claim terms need construction, and how detailed a construction it should request, needs to know the patentee's theories of infringement, including

any theories of infringement under the doctrine of equivalents. Depriving AT&T of the ability to factor the doctrine of equivalents theories into its strategy in the claim construction process, or at least to seek additional claim construction at a relatively early stage in the case, is a form of prejudice. See Biscotti, 2017 WL 2267283, at *2. Sycamore has not provided a meaningful response to AT&T's argument on that point.

As to AT&T's arguments that allowing the belated assertion of the doctrine of equivalents would require further discovery, Sycamore responds that allowing it to assert its doctrine of equivalents theories would not require any additional discovery from Sycamore's fact witnesses. Moreover, Sycamore points out that discovery—and in particular expert discovery—was still open when Sycamore apprised AT&T of its doctrine of equivalents theories in June 2017. More generally, Sycamore argues that AT&T cannot reasonably assert prejudice from any delay in disclosure, because Sycamore's responses to AT&T's interrogatories in June 2017 provided AT&T with notice of Sycamore's doctrine of equivalents theories, and AT&T could have conducted any appropriate discovery measures at that time. As noted, however, June 2017 was late in the discovery process, so at the least AT&T would have had to make adjustments in its discovery efforts, including perhaps deposing certain witnesses.[1]

---

[1] In support of its claim of prejudice, AT&T argues that it did not have the opportunity to question Sycamore's key technical witnesses regarding Sycamore's doctrine of equivalents theories because Sycamore did not disclose its doctrine of equivalents theories until the night before the last Sycamore fact witness was deposed. AT&T further asserts that it obtained key admissions from Sycamore fact witnesses regarding Sycamore's literal infringement positions and that with earlier disclosure of the Sycamore's doctrine of equivalents theories, AT&T could have questioned those witnesses with respect to those theories as well. Sycamore responds that at the time of the disclosure, fact discovery was still open, and AT&T could have sought to re-depose any witnesses who needed to be further questioned in light of the newly disclosed doctrine of equivalents theories, but at minimum requiring such duplicative efforts would be costly and inconvenient.

Based on the limited materials provided to it, the Court is not in a position to determine whether it is true that the doctrine of equivalents theories would have required AT&T to conduct further discovery of fact witnesses. However, it is apparent that at the very least adding the doctrine of equivalents theories to the case would require AT&T to revise its theories of defense and to consider whether, for example, additional expert testimony would be needed.

The fundamental problem is that Sycamore's refusal to comply with the proper mechanism for asserting belated infringement contentions led to uncertainty in the discovery process—uncertainty that the Local Patent Rules are designed to avoid. The uncertainty that followed from Sycamore's "unconventional" method of amending its infringement contentions was unnecessary, and the fault for that uncertainty is entirely Sycamore's.

While Sycamore seeks to blame AT&T for some of the delay in the development of Sycamore's infringement theories, due to AT&T's slow response to Sycamore's interrogatories regarding AT&T's theories of non-infringement, Sycamore still had time to add the doctrine of equivalents theories to its infringement contentions without the need to seek leave of court, even after AT&T's interrogatory responses were served. Sycamore's delay after receiving those interrogatory answers is attributable to Sycamore, and responsibility for that delay cannot be shifted to AT&T.

In sum, the Court finds that Sycamore has shown no justification for its disregard of the requirements of the Local Rules when introducing its doctrine of equivalents theories of liability, and the Court further finds that Sycamore has not made a showing that it would be prejudiced by the exclusion of those theories to a degree sufficient to justify overlooking Sycamore's knowing non-compliance with the Local Rules. Accordingly, the Court will strike Sycamore's doctrine of

equivalents theories from the report of its liability expert, Dr. Nettles, and preclude Sycamore from presenting any doctrine of equivalents theory at trial.

    IT IS SO ORDERED.

    SIGNED this 10th day of October, 2017.

_William C. Bryson_
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE