UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYCAMORE IP HOLDINGS LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>AT&T CORP. ET AL.,<br><br>    Defendants. | No. 2:16-cv-588-WCB<br><br>LEAD CASE |

**SYCAMORE'S SUR-REPLY TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 102(f) AND 35 U.S.C. § 102(a)**

**TABLE OF CONTENTS**

I. The '0' in Table 5 Does More Than "Indicate the End of the First Part of the Variable Field": it "Indicates the Occurrence of a Final Control Code in an Encoded Information Stream" ................................................................................................1

II. Experts Found a Written Description of Transition Indicator .............................................4

III. The Patent Office Found a Written Description of Transition Indicator ............................5

Conclusion ........................................................................................................................................5

**TABLE OF AUTHORITIES**

**CASES**

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565, 1572 (Fed. Cir. 1997)......................................................................................4

*Novozymes AS v. DuPont Nutrition Biosciences APS*,
    723 F.3d 1336, 1348 (Fed. Cir. 2013)..................................................................................4, 5

## TABLE OF EXHIBITS

| EX. | DESCRIPTION | SHORTHAND |
|---|---|---|
| | **OPPOSITION EXHIBITS** | |
| 2 | U.S. Provisional Patent Application No. 60/251,341 to Tsang et al. (December 5, 2000) | Provisional Application |
| 3 | Excerpts from Rebuttal Expert Report of Scott M. Nettles, Ph.D. on Behalf of Sycamore (Sept. 20, 2017) | Nettles Rebuttal Report |
| | **SUR-REPLY EXHIBITS** | |
| 7 | Excerpts from transcript of Videotaped Deposition of Mark Lanning (Oct. 26, 2017) | Lanning Tr. |

At the time of its filing, the Provisional Application plainly disclosed the claimed transition indicator to a person of skill in the art. Table 5 and the related text make clear that the first '0' in each row with control information indicates the occurrence of a final control code in the encoded information stream. This is shown by the detailed analysis in Sycamore's opposition, Dr. Nettles' expert report, and the Patent Office's supplemental examination decision that found the claimed transition indicator fully supported by the provisional.

Defendants ignore this analysis and instead argue that because the '0' "indicate[s] the end of the first part of the variable field," it can do nothing else and have no other purpose or significance. Reply at 3. But Defendants' isolated reading of this text is inconsistent with the associated disclosures that show the '0' is part of the "control location field" that identifies where control and data are located. Provisional Application at 14–17. The '0' signifies the end of a control code count, thereby indicating how many control codes are present and the occurrence of the final control code. *Id*. Defendants disregard these teachings, which are fatal to their argument. Instead, Defendants focus on events that occurred *after* the Provisional Application was filed. But these events are irrelevant to whether the Provisional Application provided a written description of a transition indicator. Defendants also fail to offer any persuasive justification to ignore the written description findings of Dr. Nettles and the Patent Office.

Because there is sufficient evidence for a reasonable jury to find that the Provisional Application disclosed the claimed transition indicator, Defendants' motion should be denied.

## I. THE '0' IN TABLE 5 DOES MORE THAN "INDICATE THE END OF THE FIRST PART OF THE VARIABLE FIELD": IT "INDICATES THE OCCURRENCE OF A FINAL CONTROL CODE IN AN ENCODED INFORMATION STREAM"

Defendants' entire argument hinges on the false premise that the only purpose of the '0' in Table 5 is to "indicate the end of the first part of the variable field," but Defendants repeatedly read this text in isolation and out of context. Defendants would have the Court believe that

1

"indicat[ing] the end of the first part of the variable field" is an objective in and of itself and the sole purpose of the encoding scheme's use of the '0'. But the Provisional Application makes clear that the encoding scheme uses the control location field that contains the '0' to enable efficient and transparent transport. Provisional Application at 1, 17 ("Accordingly, the control/location field of variable length utilized in the encoding scheme of the present embodiment allows efficient and transparent transport of the input words."). And while the '0' does "indicate the end of the first part of the variable field," it does so to indicate how many control codes are present and therefore the occurrence of the final control code. *Id*. at 14–17.

When an encoded information stream with control codes is received, "[t]he number of consecutive set bits **before the first zero bit occurs** are counted to determine the number of control fields that are present." *Id*. at 16–17 (emphasis added). By identifying the number of control codes present, the '0' indicates the occurrence of the final control code because the parts of the encoded information stream necessarily occur in an order that is known to both the transmitter and the receiver. *Id*. at 17. In Table 5, when control information is present, this known order is: a series of '1's corresponding to the number of control characters, followed by a '0', followed by a location pointer for each control character ('aaa', 'bbb', etc.), followed by the encoded control codes ('C1', 'C2', etc.), and finally any data words ('D1', 'D2', etc.). *Id*. at 14.

Defendants claim that the decoder in the disclosed encoding scheme "does not ascribe any special meaning or decoding function to the final control code" such that there would be no reason for the '0' in Table 5 to indicate the occurrence of a final control code in the encoded information stream. Reply at 3. This is incorrect. The receiving device does not know ahead of time how many control codes are present, and to properly decode the encoded information stream, it needs to know when the encoded control codes ('C1', 'C2', etc.) stop and any data

2

words ('D1', 'D2', etc.) begin. Provisional Application at 14–17. The first '0' communicates this information by indicating the occurrence of a final control code. *Id*.

Defendants also argue that the decoder does not rely on the first '0' but instead "relies on other information—the number of control codes represented by the control code counters—to determine how to decode the rest of the stream." Reply at 3. This is wrong. The location of the first '0' is what determines the number of control codes represented by the control code counters. Provisional Application at 14–17. The decoder cannot decode the rest of the stream until the location of the first '0' shows the count is complete and communicates the number of control codes, which necessarily indicates the occurrence of the final control code. *Id*.

For example, row 3 of Table 5 begins with "110aaabbbC1C2". *Id*. at 14. Until the receiver detects the 0 that terminates the control code count, the receiver does not know how many control codes and corresponding location pointers exist or the positions of those and the other remaining elements in the stream. For example, the receiver needs to know whether the next eight bits after C2 are two 4-bit encoded control codes ('C3' and 'C4') or an 8-bit data word ('D1'). The receiver knows when the transition from encoded control codes to data words happens based on the occurrence of the final control code, which is indicated by the first '0'. *Id*. at 14–17. Because the first '0' is located in the third position, the receiver knows there are two control codes and that 'C2' is therefore the last control code and will be followed by data word 'D1'. *Id*. Without knowing that 'C2' is the final control code, the receiving device would not know whether 'C2' is followed by 'C3' or 'D1'. The '0' in the third position indicates that 'C2' is the final control code and that it is therefore followed by 'D1'. *Id*. at 16–17.

Defendants attempt to save their argument by pointing to materials from Dr. Gorshe and

3

statements made during claim construction, but they take these materials out of context.[1] Reply at 2–4. This information from after the Provisional Application was filed cannot change the written description of transition indicator provided by the Provisional Application.

## II.     EXPERTS FOUND A WRITTEN DESCRIPTION OF TRANSITION INDICATOR

Defendants' attempts to dismiss Dr. Nettles' analysis fail. Unlike the expert in *Lockwood v. American Airlines, Inc.*, Dr. Nettles did not merely combine the disclosures with knowledge in the art "to speculate as to modifications that the inventor might have envisioned, but failed to disclose." 107 F.3d 1565, 1572 (Fed. Cir. 1997). Instead, his well-supported opinion is that the inventors invented the transition indicator and that it is disclosed in the Provisional Application. Nettles Rebuttal Report at ¶¶ 86–104.

Dr. Nettles' analysis is also unlike that of the expert in *Novozymes AS v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1348 (Fed. Cir. 2013). Dr. Nettles did not opine that a person of skill in the art would have no difficulty deriving an encoding scheme with a transition indicator from the Provisional Application when read in view of later filed claims that informed his understanding of how to derive the encoding scheme, as would be analogous to *Novozymes*. Instead, he analyzed the Provisional Application and opined that the particular encoding scheme disclosed in Table 5 and the related text *is itself* an encoding scheme with the claimed transition indicator, which shows that the transition indicator was invented by Dr. Tsang and Dr. Azizoglu and was in their possession when the Provisional Application was filed. Nettles Rebuttal Report

---

[1] In its opening claim construction brief, Sycamore stated that "***the claim language*** specifies that the 'transition indicator' is 'for indicating the occurrence of a final control code in the encoded information stream,' not for 'indicat[ing] the end of the first part of a variable field." D.I. 89 at 8–9 (emphasis added). That the patentee chose to claim "a transition indicator … for indicating the occurrence of a final control code in the encoded information stream," and not claim a bit that "indicate[s] the end of the first part of a variable field" is in no way inconsistent with Sycamore's positions here.

at ¶¶ 86–104.

AT&T's technical expert, Mr. Lanning, confirmed that in Figure 6 of the Sycamore Patent (which is identical to Table 5 but for minor formatting), the '0' is a transition indicator. Lanning Tr. at 61:24–25 ("Figure 6 shows that the '0' meets the Court's construction.").

> Q. So the 0 in that instance is a bit that indicates the occurrence of a final control code in an encoded information stream, correct?
>
> A. For this Figure 6, yes.

*Id.* at 62:2–5. The bits in the rows of Figure 6 and Table 5, including the '0', are identical.

### III. THE PATENT OFFICE FOUND A WRITTEN DESCRIPTION OF TRANSITION INDICATOR

Without addressing the substance of the examiner's analysis, Defendants question the examiner's finding of full support for the claimed transition indicator because the Supplemental Examination was an *ex parte* proceeding. Reply at 6–7. But Defendants' criticism that "[t]here was no opposing party to point out the deficiencies in the provisional disclosure" is entirely unpersuasive. Defendants fail to identify any alleged deficiencies the examiner should have considered, and the examiner explicitly incorporated into his decision the only Provisional Application disclosure Defendants use in argument—the disclosure that "a zero is inserted in this field to indicate the end of the first part of the variable field." Opposition at 6.

Similarly unpersuasive is Defendants' argument regarding new matter added to the Non-Provisional Application and Dr. Gorshe's testimony and inventor notebook. These materials all postdate the Provisional Application and are therefore irrelevant to the examiner's finding that the Provisional Application fully supported the transition indicator.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 102(f) and 35 U.S.C. § 102(a) should be denied.

5

Dated: November 2, 2017

Glen E. Summers
Karma M. Giulianelli
Sean C. Grimsley
John M. Hughes
Abigail M. Hinchcliff
BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
t: (303) 592-3100
f: (303) 592-3140
glen.summers@bartlit-beck.com
karma.giulianelli@bartlit-beck.com
sean.grimsley@bartlit-beck.com
john.hughes@bartlit-beck.com
abigail.hinchcliff@bartlit-beck.com

Taylor A.R. Meehan
BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
t: (312) 494-4400
f: (312) 494-4440
taylor.meehan@bartlit-beck.com

Otis Carroll (Texas Bar No. 03895700)
Deborah Race (Texas Bar No. 16448700)
IRELAND CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
t: (903) 561-1600
f: (903) 581-1071
nancy@icklaw.com
drace@icklaw.com

Respectfully submitted,

*/s/ Eric P. Berger*
Eric P. Berger
Michael S. DeVincenzo
Mark S. Raskin
Timothy J. Rousseau
Robert A. Whitman
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, New York 10010
t: (212) 612-3270
f: (212) 612-3297
eric.berger@mishcon.com
michael.devincenzo@mishcon.com
mark.raskin@mishcon.com
tim.rousseau@mishcon.com
robert.whitman@mishcon.com

*Counsel for Plaintiff*
*Sycamore IP Holdings LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

Dated: November 2, 2017                  */s/ Eric P. Berger*
                                                                 Eric P. Berger