UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SYCAMORE IP HOLDINGS LLC,

        Plaintiff,

  v.

AT&T CORP. ET AL.,

        Defendants.

No. 2:16-cv-588-WCB

LEAD CASE

**SYCAMORE'S MOTION FOR A DECLARATION THAT SYCAMORE MAY AMEND ITS INFRINGEMENT CONTENTIONS**

**TABLE OF CONTENTS**

I.   Sycamore Has A Good Faith Basis to Amend ................................................................... 2

II.  The Court's Construction Requires an Amendment ........................................................ 10

III. Although Not Required There Would Be "Good Cause" To Amend ............................. 11

IV.  Conclusion ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Azure Networks, LLC v. CSR PLC*,
 No. 6:11-cv-139, 2012 WL 12919538 (E.D. Tex. Dec. 4, 2012) ..................................... 2, 8, 14

*Balsam Coffee Sols. Inc. v. Folgers Coffee Co.*,
 No. 6:09-cv-89, 2009 WL 4906860 (E.D. Tex. Dec. 9, 2009) ..................................................... 9

*Cell & Network Selection LLC v. AT&T*,
 No. 6:13-cv-403, 2014 WL 10727108 (E.D. Tex. Nov. 10, 2014) ......................... 9, 10, 13, 14

*Eagle Comtronics, Inc. v. Arrow Comm'n Labs., Inc.*,
 305 F.3d 1303 (Fed. Cir. 2002) ................................................................................................ 11

*Finisar Corp. v. DirecTV Grp., Inc.*,
 424 F. Supp. 2d 896 (E.D. Tex. 2006) ............................................................................... *passim*

*Holmes v. Utah*,
 No. 2:06-cv-786, 2008 WL 11383301 (D. Utah May 15, 2008) ................................................ 2

*Juxtacomm-Texas Software, LLC v. Axway, Inc.*,
 No. 6:10-cv-011, 2012 WL 7637197 (E.D. Tex. July 5, 2012) ................................................ 13

*Nike, Inc. v. Adidas Am. Inc.*,
 479 F. Supp. 2d 664 (E.D. Tex. 2007) ............................................................................... *passim*

*SSL Servs., LLC v. Citrix Sys., Inc.*,
 No. 2:08-cv-158, 2012 WL 12904284 (E.D. Tex. Mar. 16, 2012) ....................................... 4, 12

*VirnetX Inc. v. Cisco Sys., Inc.*,
 No. 6:10-cv-417, 2012 WL 12546881 (E.D. Tex. Oct. 22, 2012) ............................. 8, 9, 10, 14

**Other Authorities**

Local Patent Rule 3-6 ............................................................................................................ *passim*

On February 15, the Court adopted a claim construction requiring the bits in each "encoded information stream" to be physically continuous. D.I. 551, Mem. Op. at 12. This construction is fundamentally different from Sycamore's previous understanding of the term and fundamentally different from prior defendants' proposed constructions in the earlier case before Judge Gilstrap. At the time of Sycamore's original infringement contentions, the Court's present construction was unexpected and unforeseeable. Despite knowing about the prior proposed claim constructions in the case before Judge Gilstrap and despite knowing from Sycamore's infringement contentions in this case that Sycamore did not understand "encoded information stream" to impose a contiguity requirement, Defendants here proposed no construction of "encoded information stream" during the initial claim construction phase. No Defendant ever proposed a construction of that term until the Court requested supplemental claim construction briefing. And even if they had, that would not have given Sycamore a right to amend under Local Patent Rule 3-6(a) or required Sycamore to file a preemptive motion for leave to amend under Local Patent Rule 3-6(b). Indeed, courts in this District have denied such motions for leave under P.R. 3-6(b) as premature.

Sycamore has therefore served amended infringement contentions pursuant to P.R. 3-6(a) to add doctrine of equivalents contentions necessitated by the Court's new construction. As the Court has recognized, that rule "allows a party to amend its infringement contentions as of right within 30 days of the Court's claim construction ruling if the party believes in good faith that the claim construction ruling so requires." D.I. 209, Mem. Op. at 2. While the Court has found that its construction eliminates Sycamore's literal infringement case, the construction has provided substantial new grounds for infringement under the doctrine of equivalents. Because Defendants have indicated that they oppose Sycamore's amendment of its infringement contentions,

1

Sycamore files this motion for a declaration that Sycamore's amendments to its infringement contentions were proper to expedite resolution of this issue (even though P.R. 3-6(a) does not require leave from the Court).[1]

### I. SYCAMORE HAS A GOOD FAITH BASIS TO AMEND

Under P.R. 3-6(a), a plaintiff has a good faith basis to amend its infringement contentions following a claim construction decision that is "unexpected or unforeseeable." *Azure Networks, LLC v. CSR PLC*, No. 6:11-cv-139, 2012 WL 12919538, at *2 (E.D. Tex. Dec. 4, 2012). In the context of P.R. 3-6(a), foreseeability of a claim construction "relates to whether the construction was foreseeable *at the time the original infringement contentions were served*." *Id.* at *2 (emphasis added). Thus, if "a particular construction proposed by Defendants and thereafter adopted by the Court" was unforeseeable or unexpected when the original contentions were served, the plaintiff has a good faith basis for an amendment.[2] *Id.*

At the time Sycamore served its original infringement contentions, it did not understand the Sycamore Patent to claim a transcoding scheme based on the physical (as opposed to *logical*) relationship between bits encoded for transmission over optical fiber as encoding schemes are

---

[1] The Court required notice of any additional motions by February 23, 2018. D.I. 551, Mem. Op. at 63. Sycamore is filing this motion now, rather than Friday, to expedite the Court's consideration. Prior to the pretrial conference, Sycamore alerted the Court and Defendants that "[i]f the Court adopts Defendants' proposed construction, Sycamore will amend its infringement contentions to allege that Defendants' accused instrumentalities infringe under Defendants' proposed construction under the doctrine of equivalents." D.I. 514, Sycamore's Suppl. Br. Regarding Infringement at 1 n.1.

[2] This understanding of the term "good faith" is consistent with its use in other similar contexts (for example, establishing the excusable neglect required to amend a deadline). The requirement essentially means that the movant must show that neither its earlier constructions nor its current amendment is part of a deliberate strategy to gain an unfair tactical advantage. *Cf. Holmes v. Utah*, No. 2:06-cv-786, 2008 WL 11383301, at *1 (D. Utah May 15, 2008). Sycamore stood to gain no tactical advantage by staying silent if Sycamore believed there were any chance the Court would adopt a claim construction that foreclosed its literal infringement case.

fundamentally about logical relationships. Sycamore had no expectation that any Defendant would later assert that all bits in an "encoded information stream" must be contiguous.

In a prior case before Judge Gilstrap on the same patent, the defendants had proposed construing "encoded information stream" to mean "encoded information group"—a construction that imposed no contiguity requirement (and eliminates the word "stream," which this Court relied on for a contiguity requirement).[3] Furthermore, the defendants in that case proposed construing "combining" to mean "placing like type data together in a field with respect to," arguing that the specification required placing location pointers in their own "contiguous block," control codes in their own "contiguous block," and data words in their own "contiguous block." Defts' Resp. Claim Construction Br., *Sycamore IP Holdings LLC v. ABB, Inc.*, No. 2:15-cv-238, D.I. 142 (Nov. 5, 2015) at 28–30. Notably, the defendants did not argue that all of the fields or bits within an encoded information stream needed to be contiguous. The Court "expressly reject[ed]" this different proposed contiguity requirement. Mem. Op., *Sycamore IP Holdings LLC v. ABB, Inc.*, No. 2:15-cv-238, D.I. 156 (Dec. 7, 2015) at 34.

Sycamore's original contentions thus did not address whether the "encoded information stream" is physically continuous, or whether a non-continuous stream would infringe under the doctrine of equivalents. Sycamore's initial infringement contentions explained exactly how Sycamore believed the G.709 and G.7041 standards practiced its patent—by generating the elements of Figure 8-2 in G.7041 (for mappings A and B), and generating the elements of Figure B.5 in G.709 (for mappings C and D), *regardless* of the "actual superblock structure" in Figure

---

[3] *See* Joint Claim Construction Statement, *Sycamore IP Holdings LLC v. ABB, Inc.*, No. 2:15-cv-238, D.I. 132 (Sept. 24, 2015) at Ex. B at 3–4. After briefing the defendants agreed with Sycamore that no construction of that term was needed. Amended Joint Claim Construction Chart, *Sycamore IP Holdings LLC v. ABB, Inc.*, No. 2:15-cv-238, D.I. 154 (Nov. 30, 2015) at 2.

3

8-3 of G.7041 or Figures 17-18, and F.1 of G.709. *See, e.g.*, Ex. 1, Infringement Contentions (Sept. 12, 2016) at Ex. A, 18–19 (directing infringement contentions to Figure 8-2, not the "actual superblock structure" of Figure 8-3). For this reason, Sycamore's expert was focused on the *logical* relationship between bits in the encoding scheme. *See* D.I. 551 at 26 (quoting Sycamore's expert's testimony that Figure 8-2 "is showing the logical relationships that go into the transform" and "you don't have to preserve the physical relationships we see in 8-2 in the serialized output").

Defendants appear to have had the same initial understanding of "encoded information stream." Even though Sycamore's initial infringement contentions indicated Sycamore did not read "encoded information stream" to impose a physical contiguity requirement, Defendants never asked the Court to construe that term nor did they give any hint of such a construction in their invalidity contentions.[4] This case is thus like *SSL Servs., LLC v. Citrix Sys., Inc.*, where the court found claim constructions to be unexpected where, as here, the constructions "were not included in either party's proposed definitions of claim terms or its *Markman* briefings." No. 2:08-cv-158, 2012 WL 12904284, at *2 (E.D. Tex. Mar. 16, 2012).

The prior proceedings and the parties' conduct in this case show that the Court's

---

[4] Indeed, one of the prior art references, U.S. Patent No. 6,430,201, alleged in Defendants' November 4, 2016 Invalidity Contentions to anticipate the Asserted Claims did not result in a physically contiguous outgoing stream; instead the bits for the streams relating to two information groups were "multiplexed" or "interleav[ed]" together. *See* Ex. 2, Defts' Invalidity Contentions (Nov. 4, 2016) at Ex. B (quoting '201 patent at Abstract ("Multiple gigabit Ethernet (GbE) and Fibre Channel (FC) *signals are multiplexed* (16) and transported …." (emphasis added)), at 3:35–39 ("The receiver uses the stream identifier of the packets *to separate the streams for the different signals*, and then re-encodes each signal to re-create the encoded signals at the receive end" (emphasis added)), and at 7:29–34 ("A method according to claim 1, further comprising: at the transmitter, converting sequential data blocks of each non-encoded signal into corresponding packets, and *asynchronously interleaving the packets of the non-encoded signals to create the multiplexed data signal*" (emphasis added))).

4

construction was unexpected and unforeseeable at the time of Sycamore's original infringement contentions. This fact alone makes this case entirely different from those cases where courts have denied amendment under P.R. 3-6(a). For example, in the cases that AT&T submitted in advance of the pretrial conference, D.I. 515—*Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664 (E.D. Tex. 2007) and *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896 (E.D. Tex. 2006)—the party seeking amendment was aware of the opposing party's proposed construction at the time of its operative contentions. In *Nike*, the parties submitted a joint claim-construction statement that included each party's proposed constructions of the disputed terms, and Nike then supplemented its infringement contentions, which became the operative contentions for the Court's claim construction order. 479 F. Supp. 2d at 666, 669. And in *Finisar*, the defendant had the plaintiff's preliminary and supplemental infringement contentions and proposed constructions before submitting its invalidity contentions. 424 F. Supp. 2d at 901. In this case, however, Sycamore was not even aware of Defendants' relevant non-infringement argument (much less a proposed construction offered only at the Court's invitation after summary judgment briefing) until long after Sycamore had served its infringement contentions.

No Defendant raised the structure of the superblock in its initial response to Sycamore's Common Interrogatory No. 4, which asked Defendants for the bases for any non-infringement contentions. It was not until after the original claim construction process concluded, and the Court had adopted Sycamore's construction of the term "transition indicator," that any Defendant (AT&T) raised the "actual superblock structure" as a defense to infringement (a defense that had nothing to do with the meaning of "transition indicator"). On March 28, 2017, AT&T asserted that the superblock structure did not infringe because the flag bit was not "combined" in a single encoded information stream with other components corresponding to the

5

same incoming information group. Ex. 3, AT&T's Second Supplemental Responses to Sycamore's First Set of Common Interrogatories (No. 4) (Mar. 28, 2017) at 8–16. Notably, AT&T did not state its non-infringement argument required construction of any claim terms, much less of the term "encoded information stream."

Level 3 did not raise a similar non-infringement argument until serving amended interrogatory responses *on the last day of fact discovery* and likewise did not propose a construction of "encoded information stream." Ex. 4, Level 3's Responses and Supplemental Responses to Sycamore's First, Second, Third, and Fourth Sets of Common Interrogatories (Nos. 1–15) (July 19, 2017) at 11–15 ("In addition, none of the Accused Mappings generate an encoded information stream including the data indicator and the data words because they generate superblocks without a data indicator preceding the packets."). And CenturyLink never raised any such additional non-infringement theory—its expert apparently thought so little of the argument he did not include it in his expert report. *See* Ex. 5, Sharma Tr. at 231:12–19 (CenturyLink's non-infringement expert admitting that he was not offering an opinion based on the physical separation of components of the encoded information stream).

In any event, no Defendant proposed construing "encoded information stream" to require physical contiguity of bits. Indeed, counsel for AT&T recognized at the pretrial conference that the present claim construction dispute was not anticipated by the parties even as late as the October 13, 2017 deposition of Dr. Zhi Ding, Verizon's non-infringement expert. *See* D.I. 544, Pretrial Conf. Tr. at 101:1–13 ("Dr. Ding was asked a series of hypothetical questions. *And he answered them the way he did prior to the Court identifying that there is a claim construction dispute about what the encoded information stream means* …. So Dr. Ding was not asked about a two-step theory after the parties submitted their [supplemental] claim constructions, *and I don't*

6

*know how he would testify if asked that question today ….*" (emphasis added)).

It was only after the parties had completed summary judgment briefing—eight months after the original claim construction—that the Court determined that the parties' literal infringement positions were based, at least in part, on fundamentally different understandings of the "encoded information stream" limitations of independent claims 1 and 8 and asked for supplemental claim construction briefing. D.I. 389, Order at 2; *see also* D.I. 551, Mem. Op. at 7 ("Following summary judgment briefing, *the Court identified* several infringement disputes *that the Court considered* to be predicated on disagreements regarding claim construction. The Court therefore directed the parties to file briefs on the *newly identified* claim construction issues." (emphasis added)). Only then did Defendants propose construing "encoded information stream" to mean "a continuous series of encoded bits that is to be sent or received over the network and that corresponds to its respective information group," D.I. 419, Defts' Opening Suppl. Claim Construction Br. at 1, where "continuous" requires physical contiguity, D.I. 421, Defts' Responsive Suppl. Claim Construction Br. at 1–2.

The construction of "encoded information stream" proposed by Defendants in response to the Court's request for supplemental briefing was so different from Sycamore's understanding of the patented invention (and its proposed constructions) that Sycamore's original infringement contentions did not account for it. If Sycamore had understood Defendants to be raising this argument at the time of its original infringement contentions, it would have asserted that the superblock structure infringes under the doctrine of equivalents despite physical separation of the flag bit. But no such contentions were warranted at the time.

The Court's prior order granting AT&T's motion to strike Sycamore's doctrine of equivalents theories does not change the analysis. *See* D.I. 209. The Court there faulted

7

Sycamore for not having amended under P.R. 3-6(a) after receiving AT&T's supplemental interrogatory response (which was served within 30 days of the Court's initial claim construction order), or moving for leave to amend sometime thereafter under P.R. 3-6(b). *Id.* at 2, 4. As Defendants have previously noted, however, Sycamore could not have amended under P.R. 3-6(a) after receiving AT&T's supplemental interrogatory response, even though still within 30 days of the Court's initial claim construction order, because any amendment would have been unrelated to the Court's construction of the term "transition indicator." *See* D.I. 157, AT&T's Mot. to Strike at 9; *cf. VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417, 2012 WL 12546881, at *4 (E.D. Tex. Oct. 22, 2012) (noting that "[t]here must be a nexus" between plaintiff's amended infringement contentions and defendant's amended invalidity contentions for the latter to be permissible under P.R. 3-6(a)).

As for not moving earlier for leave to amend under P.R. 3-6(b), courts in this District have held, under similar circumstances, that such a request would have been unwarranted and premature. A plaintiff is under no obligation—indeed, courts have found no good cause under P.R. 3-6(b)—to amend infringement contentions simply because a defendant has proposed a disputed claim construction, much less merely raised a non-infringement argument that *could* have raised a claim-construction issue.[5] As stated in *Azure Networks*, "[i]f Plaintiffs feel a particular claim construction is the basis for amendment, then that amendment should come after the Court has adopted its final Claim Construction Order." 2012 WL 12919538, at *2 (stating further that although a "party is not free to amend its infringement contentions [under P.R. 3-6(a)] just because the Court does not adopt its exact proposed construction," this "does not mean

---

[5] It would create significant mischief if every time a defendant's non-infringement theory might implicitly raise a claim construction issue with which the plaintiff disagreed, the plaintiff was required to preemptively amend its own contentions.

8

a party is encouraged to seek leave of the Court when it receives a proposed claim construction it does not agree with. The better course is to wait until the Court has adopted a final construction that would give the party a basis to move on that account."); *see Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-cv-403, 2014 WL 10727108, at *3 (E.D. Tex. Nov. 10, 2014) (plaintiff "was not required to incorporate Defendants' contrasting proposed constructions in its infringement contentions prior to those constructions being adopted by the Court"); *VirnetX*, 2012 WL 12546881, at *2 (noting that court had previously denied plaintiff's motion for leave to amend its infringement contentions, meant "to account for the possibility that the Court would adopt Defendants' construction," because "VirnetX could amend its infringement contentions pursuant to P.R. 3-6(a) if necessary following the Court's Claim Construction Opinion"); *cf. Balsam Coffee Sols. Inc. v. Folgers Coffee Co.*, No. 6:09-cv-89, 2009 WL 4906860, at *4 (E.D. Tex. Dec. 9, 2009) (explaining that "[p]laintiff should not be concerned that its answer [to an interrogatory] will somehow impede its ability to adjust its infringement contentions after the Court's claim construction ruling," because plaintiff could supplement its interrogatory responses and contentions after such ruling).

In any event, the failure to file an earlier motion under P.R. 3-6(b) does not preclude a subsequent motion under P.R. 3-6(a). This is particularly true where a subsequent construction was both unexpected at the time of the operative infringement contentions and not squarely presented by earlier contentions or arguments. *See supra* at 2. Moreover, as discussed in more detail below, the Court's recent claim construction and summary judgment decision has dramatically altered the landscape of the case. For example, in granting AT&T's motion to strike, the Court relied in part on its determination that doing so "will not have the effect of gutting Sycamore's case[.]" D.I. 209, Mem. Op. at 9. Given the Court's claim construction and

summary judgment opinion, that is precisely what disallowing amendment pursuant to P.R. 3-6(a) would do here. Given cases holding that a motion under P.R. 3-6(b) would have been premature, given amendment under P.R. 3-6(a) would not have been allowed earlier, and given the Court's new claim construction, amendment under P.R. 3-6(a) is entirely proper.

## II. THE COURT'S CONSTRUCTION REQUIRES AN AMENDMENT

There can be no genuine dispute that the Court's present construction requires an amendment. The construction adopts a fundamentally different view of the Sycamore Patent, which Sycamore previously viewed as directed to the logical relationship of certain encoded bits. It is therefore necessary for Sycamore to explain why Defendants infringe under the doctrine of equivalents. Defendants could hardly argue that an amendment is *not* required, given the Court's grant of summary judgment of non-infringement based on its claim construction. An amendment is warranted when the adoption of another party's construction disposes of a party's literal infringement allegations. *See, e.g.*, *VirnetX*, 2012 WL 12546881, at *3 (noting, as a reason amendment was appropriate, that "VirnetX has raised concerns that its literal infringement allegations … were disposed of in light of the Court's Construction Ruling"); *see also Cell & Network Selection*, 2014 WL 10727108, at *2 n.2 (noting that there are exceptions to the rule that "adoption of another's party construction alone is not sufficient to support a party's good faith belief it was surprised by the Court's ruling" and citing cases where the construction would dispose of plaintiff's literal infringement allegations).

Moreover, the Court's construction makes this a clear case for the doctrine of equivalents. The Court's constructions do not change the essential inventive components of the patent, nor do they alter the fact that the standards incorporate each inventive component into the accused mappings. The "superblock" structure still utilizes all logical relationships of the patented encoding scheme; it still uses a "data indicator," a "transition indicator," "location

pointers," and the same "control codes" as the patented encoding scheme; and it does not provide any further or different compression benefits than the patented encoding scheme. Exactly the same bits are being transmitted within the superblock, with no change in bit values or their function, in both the invention and the superblock implementation. Thus, even though the flag bit is physically separated from the remainder of its corresponding bits in the superblock, the flag bits and data words in the accused mappings "perform[] substantially the same function in substantially the same way to obtain the same result" as they do in the asserted claims. *Eagle Comtronics, Inc. v. Arrow Comm'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002) (quotation marks omitted). Without the inventive components of the patent, the accused mappings would simply not be possible. In sum, the Court's construction was an unexpected and unforeseeable change to Sycamore's understanding of its patent, and that change requires an amendment so that Sycamore may explain why Defendants still infringe in light of the new construction.

## III. ALTHOUGH NOT REQUIRED THERE WOULD BE "GOOD CAUSE" TO AMEND

Under P.R. 3-6(a), a good faith belief that amendment is required is all that is necessary for Sycamore to amend its infringement contentions within 30 days of the Court's ruling. Sycamore anticipates, however, that Defendants may argue that other requirements apply based on the *Nike* and *Finisar* decisions that AT&T submitted before the January pretrial conference.

On their face, these cases appear to suggest that the Court might consider factors "akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Nike*, 479 F. Supp. 2d at 668. But the factors these courts list are those relevant to deciding whether there is *good cause* for an amendment—namely, (1) the danger of unfair prejudice, (2) the length of the delay, (3) the reason for the delay and the diligence of the offending party, and (4) the importance of the evidence. *Id.* While such factors are relevant in deciding whether amendment is warranted under P.R. 3-6(b) (amendment for good cause), they are not under P.R. 3-6(a)

11

(amendment after claim construction); if they were, there would be no reason to write separate subsections with separate requirements. The *Nike* and *Finisar* courts appear therefore to have conflated P.R. 3-6(a) and (b), and their analysis of the good cause factors should have no relevance to this Court's analysis of amendment under P.R. 3-6(a).[6]

But even if the Court were to consider similar factors, they would weigh in Sycamore's favor. No Defendant would suffer unfair prejudice by virtue of an amendment—a showing of good faith by the amending party is sufficient to protect an opposing party from unfair prejudice. *SSL Servs.*, 2012 WL 12904284, at *2 (stating that P.R. 3-6(a)'s "good faith" requirement is meant to "protect parties from unfair prejudice").

Nor do the specific facts reveal any unfair prejudice to Defendants. For example, in June 2017, Sycamore responded to an AT&T interrogatory by asserting a doctrine of equivalents theory to address AT&T's contention (raised in March 2017) that practicing the standards does not infringe because the "data indicator" and "data words" were not "combined" in the same encoded information stream. Ex. 6, Sycamore's Objections and Responses to AT&T's Second Set of Individual Interrogatories (Nos. 3–10) (June 6, 2017) at 6–12. AT&T then responded to this theory in its expert report. Ex. 7, Lanning Report at 111–18.[7]

Level 3, meanwhile, waited until the last day of fact discovery to amend its interrogatory responses to add non-infringement arguments relating to the superblock. This amendment came almost ten months after Sycamore served its infringement contentions, four months after claim

---

[6] *Finisar* analyzed an amendment under then-P.R. 3-6(b)(1) and (2), which are nearly identical to the current P.R. 3-6(a)(2)(A) and (B).

[7] The Court's construction of "encoded information stream" is different from AT&T's non-infringement argument from March, which focused on the word "combined." As a result, Sycamore has updated its amended doctrine of equivalents contentions to account for the Court's construction of a different claim term. This again simply confirms the unexpected nature of the Court's construction.

12

construction, and in the *fifth* supplemental response to an interrogatory asking for Level 3's non-infringement theories. And even then, the argument was not raised as a claim construction argument. *See supra* at 6. And CenturyLink's expert has never sponsored a non-infringement argument based on the physical separation of the flag bit and data words in the superblock.

To the extent Defendants argue they need time to respond to Sycamore's amended contentions, there is sufficient time before trial to allow additional expert discovery on the limited issue of whether the standards satisfy one claim element under the doctrine of equivalents and, if not, any prejudice could be cured by a continuance of the trial date.[8] *See, e.g.*, *Cell & Network Selection*, 2014 WL 10727108, at *4 (noting that a continuance may be granted to cure prejudice from amended infringement contentions); *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, No. 6:10-cv-011, 2012 WL 7637197, at *1 (E.D. Tex. July 5, 2012) (noting that court had previously stayed case shortly before trial when it became clear that plaintiff intended to amend under P.R. 3–6(a)(1)). Instead, it is Sycamore that would be unfairly prejudiced by the complete dismissal of its case, particularly in light of Defendants' late-added (or in the case of CenturyLink never-added) non-infringement theories when Defendants could have just as easily requested the Court to construe "encoded information stream" much earlier in the case.

The reason for and length of delay also weigh in Sycamore's favor, as does Sycamore's diligence in serving its amended contentions. As discussed at length above, no defendant in either this case or the earlier case proposed a construction of "encoded information stream" that required physical contiguity of bits until Defendants responded to the Court's order for

---

[8] Indeed, the longest delay in taking this discovery would be the briefing for this opposed motion. For that reason, Sycamore intends to request an expedited briefing schedule. Defendants are considering whether they oppose that request, and Sycamore will file its motion as soon as it knows whether the motion is opposed.

supplemental claim construction briefing. And even then, it would have been premature to seek leave to amend. *See Azure Networks*, 2012 WL 12919538, at *2. Sycamore has served its amended contentions as soon as practicable after it received the Court's construction.

The facts of this case are very different from the small number of cases where courts have disallowed amendments under P.R. 3-6(a). Unlike those cases, Sycamore has explained *why* the Court's constructions were unforeseeable. *Compare Nike*, 479 F. Supp. 2d at 669 ("Nike does not explain why the court's construction was so different that amended infringement contentions were necessary."); *Finisar*, 424 F. Supp. 2d at 901 ("DirecTV did not adequately explain how the court's definition of any of the terms in dispute was so surprising, or differed so greatly from the proposals made by the parties, that it justifies admission of new prior art references ….").

Further, both the *Nike* and *Finisar* courts emphasized that the evidence in the record was insufficient to establish that the amendment was necessary to the amending party. *See Nike*, 479 F. Supp. 2d at 670 ("Nike certainly has not indicated that the court's claim construction somehow disposes of its literal infringement allegation."); *Finisar*, 424 F. Supp. 2d at 902 ("DirecTV has not established that disallowing these new references is tantamount to a default judgement [*sic*] or that they are vital to its defense."); *see also VirnetX*, 2012 WL 12546881, at *3 (noting, as a factor weighing in favor of amendment, that "VirnetX has raised concerns that its literal infringement allegations against Defendants were disposed of in light of the Court's Construction Ruling"); *Cell & Network Selection*, 2014 WL 10727108, at *2 n.2. Here the amendment is crucial to Sycamore's case—amendment is necessary to address a fundamental change in Sycamore's understanding of its patent based on the Court's claim construction, unlike the earlier motion to strike. D.I. 209, Mem. Op. at 9 (granting motion to strike in part because "the doctrine of equivalents theory is only a back-up theory of liability" and "striking the

14

doctrine of equivalents" "will not have the effect of gutting Sycamore's case").

Moreover, as discussed above, both *Nike* and *Finisar* concerned amendments offered in very different postures than Sycamore's amendment here. *Supra* at 5. Furthermore, in *Nike* the plaintiff had arguably *abandoned* the very doctrine-of-equivalents theories that it later sought to add. 479 F. Supp. 2d at 669. And in *Finisar* the defendants sought to add new invalidity references based on the court's claim construction even though those constructions had been largely agreed to by the parties or were closer to the defendant's constructions than to the plaintiff's. 424 F. Supp. 2d at 901. None of these circumstances is present here.

## IV. CONCLUSION

Sycamore respectfully requests a declaration that Sycamore's amended infringement contentions were appropriately served under P.R. 3-6(a).

15

Dated: February 21, 2018

Eric P. Berger
Michael S. DeVincenzo
Mark S. Raskin
Timothy J. Rousseau
Robert A. Whitman
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, New York 10010
t: (212) 612-3270
f: (212) 612-3297
eric.berger@mishcon.com
michael.devincenzo@mishcon.com
mark.raskin@mishcon.com
tim.rousseau@mishcon.com
robert.whitman@mishcon.com

Otis Carroll (Texas Bar No. 03895700)
Deborah Race (Texas Bar No. 16448700)
IRELAND CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
t: (903) 561-1600
f: (903) 581-1071
nancy@icklaw.com
drace@icklaw.com

Respectfully submitted,

*/s/ John M. Hughes*

Glen E. Summers
Karma M. Giulianelli
Sean C. Grimsley
John M. Hughes
Abigail M. Hinchcliff
BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
t: (303) 592-3100
f: (303) 592-3140
glen.summers@bartlit-beck.com
karma.giulianelli@bartlit-beck.com
sean.grimsley@bartlit-beck.com
john.hughes@bartlit-beck.com
abigail.hinchcliff@bartlit-beck.com

Taylor A.R. Meehan
Madeline W. Lansky
BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
t: (312) 494-4440
f: (312) 494-4440
taylor.meehan@bartlit-beck.com
madeline.lansky@bartlit-beck.com

*Counsel for Plaintiff*
*Sycamore IP Holdings LLC*

**CERTIFICATE OF CONFERENCE**

I hereby certify that the counsel of record has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The conference required by Local Rule CV-7(h) was conducted on February 21, 2018, with counsel for Defendants. No resolution could be reached for the reasons described in this motion, and discussions have conclusively ended in an impasse.

Dated: February 21, 2018             */s/ John M. Hughes*
                                      John M. Hughes


**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

Dated: February 21, 2018             */s/ John M. Hughes*
                                      John M. Hughes