# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

SYCAMORE IP HOLDINGS LLC,           §
                                    §
    *Plaintiff*,                  §
                                    §
    v.                           §    Case No. 2:16-CV-588-WCB
                                    §        LEAD CASE
AT&T CORP., et al.,                 §
                                    §
    *Defendants*.                 §

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>Sycamore's Motion for a Declaration that Sycamore May Amend Its Infringement Contentions</u>, Dkt. No. 552, and <u>Sycamore's Opposed Motion for Leave to Serve Supplemental Expert Report Relating to Sycamore's Amended Infringement Contentions</u>, Dkt. No. 556. The motions are DENIED.

## BACKGROUND

On February 16, 2018, the Court issued a memorandum opinion and order that construed two disputed claim terms. Based on one of those constructions, the Court granted the defendants' motion for summary judgment of no literal infringement. Dkt. No. 551.[1] Sycamore seeks to revive its case by amending its infringement contentions to assert a theory of infringement based on the doctrine of equivalents against the three remaining sets of defendants.

The Local Patent Rules of the United States District Court for the Eastern District of Texas set forth specific procedures for amending infringement contentions. Local Patent Rule 3-6 states that a party's infringement contentions "shall be deemed to be that party's final

---

[1] The Court assumes familiarity with that opinion and therefore does not describe the patent and the infringement allegations in detail in this order.

contentions," with two exceptions. First, Rule 3-6(a)(1) allows a party to amend its infringement contentions as of right within 30 days of the court's claim construction ruling if the party "believes in good faith" that the claim construction ruling so requires.[2] Second, Rule 3-6(b) provides that a party may amend its infringement contentions at any other time "only by order of the Court, which shall be entered only upon a showing of good cause." Sycamore asks the Court for a declaration that it may amend its infringement contentions pursuant to Local Patent Rule 3-6(a)(1) and for leave to serve a supplemental expert report relating to its proposed amended infringement contentions.

There is considerable history behind Sycamore's present effort to invoke the doctrine of equivalents. On September 12, 2016, Sycamore served its initial disclosures pursuant to Local Patent Rule 3-1(d), which requires a party claiming patent infringement to describe its allegations in reasonable detail, including "[w]hether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents." In its disclosures, Sycamore stated the following regarding the doctrine of equivalents:

> Sycamore asserts that, under the proper construction of the Asserted Claims and their claim terms, every limitation of each of the Asserted Claims is literally satisfied . . . . To the extent that any limitation is found to be not present literally, Sycamore asserts that such limitation is present under the doctrine of equivalents. At present, Sycamore lacks knowledge as to which, if any, limitations of the asserted claims Defendants believe are not literally satisfied by the Accused Instrumentalities and, hence, as to whether Sycamore will be contending that any limitations of the Asserted Claims (and, if so, which ones) are satisfied by the Accused Instrumentalities under the doctrine of equivalents. Moreover, pursuant to Local Patent Rule 3-6, Sycamore reserves the right to amend its infringement contentions to specifically assert infringement by the doctrine of equivalents in light of the Court's claim construction.

---

[2] Local Patent Rule 3-6(a)(2)(B) permits an alleged infringer to serve amended invalidity contentions under the same standard—i.e., when it "believes in good faith that the Court's Claim Construction Ruling so requires." Courts in this district have applied the same test for both provisions.

Dkt. No. 168-1, at 4.

On March 28, 2017, AT&T served a supplemental response to Sycamore's interrogatories that set forth a number of AT&T's non-infringement positions. Among other positions, AT&T argued that the flag bit (which Sycamore identified as the claimed "data indicator") and the 8-octet field (which Sycamore identified as the claimed "data words") are "never 'combined' in a single stream of encoded information" in the accused mappings, nor does there ever exist "a single 'encoded information stream including' both a Flag Bit and an 8-Octet Field." Dkt. No. 168-2, at 9. Rather, AT&T contended, "the purported encoded information stream is broken up into separate, smaller encoded information streams separated by bits corresponding to other multi-word information groups." Id. at 9-10. Accordingly, AT&T contended, to the extent that the accused devices perform a mapping in accordance with the GFP-T standards, they do not practice the limitations of the asserted claims and therefore do not infringe claims 1 or 8. Id.; see also id. at 12, 13.

On June 6, 2017, Sycamore served a response to an interrogatory that, for the first time, described in detail Sycamore's doctrine of equivalents theory. Dkt. No. 168-4. Sycamore noted that the basis for AT&T's contention that the limitations in question were not literally satisfied was that "in the superblock structure for mapping 64B/65B code components into the GFP frame (depicted in Figure 8-3 of the G.7041 standard), the 8-Octet fields corresponding [to] eight information groups are transmitted first, followed by the Flag Bits corresponding to each of the information groups." Id. at 7-8. As a result, AT&T's theory was that the flag bit and the 8-octet field are never combined in a single stream of encoded information. Id. at 8.

After stating that it disagreed with AT&T's position that the limitations in question were not literally satisfied, Sycamore argued that the accused devices "satisfied the claim elements

under the doctrine of equivalents." Id. at 8. Sycamore contended that a person of ordinary skill in the art "would have considered the difference between an encoded information stream that includes the data indicator and data words for a single information group, all collected together and an encoded information stream that includes data indicators for multiple information groups along with the associated data words, where the data indicators are collected together after all of the data words, to be insubstantial." Id. In addition, Sycamore argued, both encoded information streams perform substantially the same function, in substantially the same way, to achieve substantially the same result. Id.

On June 26, 2017, AT&T notified Sycamore by email that Sycamore had not followed the procedure required by the Local Patent Rules for amending infringement contentions. See Dkt. No. 168-5, at 2-3. AT&T first noted that, under Eastern District of Texas precedent, boilerplate language reserving the right to assert the doctrine of equivalents, such as in Sycamore's initial disclosure, is inadequate to assert such a theory of infringement. Id. (quoting Eolas Techs. Inc. v. Amazon.com, Inc., No. 6:15-cv-01038, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016)). For that reason, AT&T argued that in order to assert its new doctrine of equivalents theory of infringement, Sycamore was required to amend its infringement contentions and seek leave of court to do so. AT&T asked Sycamore to inform it by June 27 whether it planned to amend its infringement contentions to add a doctrine of equivalents theory. Id. at 3.

Sycamore responded to AT&T's email by a return email on July 12, 2017. See Dkt. No. 168-6. In that email, Sycamore stated that its interrogatory responses of June 6, 2017, had set forth what Sycamore's position as to the doctrine of equivalents would be if AT&T's literal infringement arguments were found persuasive. The email closed by stating that "Sycamore

incorporates the DOE positions from its June 6, 2017 interrogatory response into its infringement contentions." Id. at 1. Sycamore did not indicate its intention to seek leave of court to amend its infringement contentions by adding a doctrine of equivalents theory, and it did not do so.

On July 17, 1017, AT&T sent Sycamore a follow-up email noting Sycamore's statement that it had "incorporated" the doctrine of equivalents discussion in its interrogatory response into its infringement contentions, but noting, for the second time, that Sycamore had not sought leave from the Court to amend its contentions. AT&T reiterated its view that Sycamore's position "is contrary to the law in the Eastern District of Texas, and if Sycamore includes these new DOE positions in an expert report, we will move to strike them." Dkt. No. 168-7, at 1. AT&T again stated that "[i]f Sycamore intends to assert these new DOE theories, amendment of Sycamore's infringement contentions is required, and Sycamore must seek leave of the Court under L.P.R. 3-6(b) and show 'good cause.'" Id.

Sycamore again took no action in response to AT&T's email. It did not seek to amend its infringement contentions pursuant to Local Patent Rule 3-6(b). Moreover, because the Court's initial claim construction order had been issued on March 16, 2017, Dkt. No. 110, it was not possible at that point for Sycamore to serve its amended infringement under Local Patent Rule 3-6(a)(1), which allows amendments to be served within 30 days of the Court's initial claim construction order.

A month later, Sycamore included its doctrine of equivalents theory against AT&T in the expert report of its infringement expert, Dr. Nettles. See Dkt. No. 168-8. Shortly thereafter, AT&T moved to strike Sycamore's doctrine of equivalents theory. Dkt. No. 157. Following briefing, the Court granted that motion on October 10, 2017. Dkt. No. 209. The Court explained, first, that doctrine of equivalents theories must be set forth in detail; boilerplate

allegations, such as those contained in Sycamore's initial disclosures, are insufficient.  See Godo

Kaisha IP Bridge 1 v. Broadcom Ltd., No. 2:16-cv-134, 2017 WL 2869331, at *2 (E.D. Tex.

Apr. 27, 2017) (citing cases); Eolas Techs. Inc., 2016 WL 7666160, at *3.  The Court then noted

that Sycamore had neither timely amended its infringement contentions following the Court's

initial claim construction ruling, pursuant to Local Patent Rule 3-6(a), nor sought the Court's

leave to amend its infringement contentions, pursuant to Local Patent Rule 3-6(b).  The Court

found that Sycamore had shown no justification for its disregard of the Local Patent Rules and

that there were no reasons to overlook Sycamore's non-compliance.  The Court further found

that Sycamore's failure to act promptly was prejudicial to AT&T, as fact discovery had closed in

July 2017, and expert discovery was scheduled to finish by the end of September.  Moreover, the

Court noted that Sycamore had not asserted the doctrine of equivalents against any of the other

defendants, even though its theory of infringement was identical for each defendant.  The Court

therefore struck Sycamore's doctrine of equivalents theory against AT&T and precluded

Sycamore from presenting any doctrine of equivalents theory at trial.

    Following the completion of the briefing of the parties' summary judgment and Daubert

motions, the Court identified several infringement disputes that the Court viewed as, in essence,

disagreements regarding claim construction.  Dkt. No. 389.  After the Court received

supplemental briefing and heard oral arguments on those claim construction issues, the Court

issued a memorandum opinion and order that, among other things, construed the term "encoded

information stream" and found non-infringement based on that construction.  Dkt. No. 551.

Specifically, the Court adopted the defendants' proposed construction and construed "encoded

information stream" to mean "a continuous series of encoded bits that is to be sent or received

over the network and that corresponds to its respective information group."  Id. at 12; see also

Dkt. No. 419, at 1 (defendants' opening claim construction brief). In addition, the Court found that Sycamore had not pointed to evidence showing that the defendants' implementations of the accused standards generated an encoded information stream that contained both the data indicator and the data words, as required by claims 1 and 8. Dkt. No. 551, at 18-36. Accordingly, the Court entered summary judgment of non-infringement in favor of all the remaining defendants in the case.

## DISCUSSION

Sycamore now seeks to amend its infringement contentions under Local Patent Rule 3-6(a)(1), which provides that a party claiming patent infringement may amend its infringement contentions if that party "believes in good faith that the Court's Claim Construction Ruling so requires." If the infringement contentions are amended, Sycamore asks that the Court vacate the summary judgment order against it.

### A

Both Sycamore and the defendants acknowledge that, in determining whether a proposed amendment to infringement or invalidity contentions is made in "good faith," as provided by Local Patent Rule 3-6(a)(1), courts in the Eastern District of Texas have uniformly required the movant to show that the claim construction adopted by the court was "unexpected or unforeseeable." Azure Networks, LLC v. CSR PLC, No. 6:11-cv-139, 2012 WL 12919538, at *2 (E.D. Tex. Dec. 4, 2012); see also Cell & Network Selection LLC v. AT&T, No. 6:13-cv-403, 2014 WL 10727108, at *2 (E.D. Tex. Nov. 10, 2014) ("P.R. 3-6(a)(1) allows a party alleging patent infringement to amend its contentions in light of an unexpected claim construction by the Court." (quoting VirnetX Inc. v. Cisco Sys., Inc., No. 6:10-cv-417, 2012 WL 12546881, at *3 (E.D. Tex. Oct. 22, 2012))); CoreLogic Info. Sols., Inc. v. Fiserv, Inc., No. 2:10-cv-132, 2012

WL 4051823, at *1 ("Without an adequate explanation of what in particular was unexpected in the Court's claim construction ruling, Defendants have not justified their late disclosure."); <u>SSL Servs., LLC v. Citrix Sys., Inc.</u>, No. 2:08-cv-158, 2012 WL 12904284, at *2 (E.D. Tex. Mar. 16, 2012) ("This exception allows parties to respond to an unexpected claim construction by the Court."); <u>Parallel Networks, LLC v. Abercrombie & Fitch</u>, No. 6:10-cv-111, 2011 WL 13098299, at *2 (E.D. Tex. Dec. 5, 2011) ("[B]ecause the Court's claim construction was hardly unanticipated, P.R. 3-6(a) is inapplicable."), <u>aff'd</u>, 704 F.3d 958, 971 (Fed. Cir. 2013) (rejecting argument that the district court had failed to consider proper factors bearing on whether "good cause" was shown to amend infringement contentions under Local Patent Rule 3-6(b); citing with approval district court's conclusion that Local Patent Rule 3-6(a) was inapplicable because the "court's claim construction was hardly unanticipated"); <u>Acqis LLC v. Appro Int'l, Inc.</u>, No. 6:09-cv-148, 2011 WL 13137344, at *2 (E.D. Tex. Jan. 20, 2011) ("[T]he exception articulated by Patent Rule 3-6(a)(2)(B) is narrowly drawn to circumstances where the Court's construction reasonably surprises a party."); <u>Iovate Heath Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.</u>, No. 9:07-cv-46, 2008 WL 11344914, at *1 (E.D. Tex. Aug. 7, 2008) (Local Patent Rule 3-6(a)(2)(B) "is intended to allow a party to respond to an <u>unexpected</u> claim construction by the court."); <u>Saffran v. Boston Sci. Corp.</u>, No. 2:05-cv-547, Dkt. No. 143, at 5 (E.D. Tex. Jan. 28, 2008) ("A party is permitted to amend its contentions in response to an <u>unexpected</u> claim construction, not simply a construction with which the party disagrees."); <u>Nike, Inc. v. Adidas Am. Inc.</u>, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007) ("This exception is intended to allow a party to respond to an unexpected claim construction by the court. This does not mean that after every claim construction order, new infringement contentions may be filed. That would destroy the effectiveness of the local rules in balancing the discovery rights and

responsibilities of the parties."); <u>Finisar Corp. v. DirecTV Grp., Inc.</u>, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (same).

While the parties agree that foreseeability is the test for determining "good faith" under Local Patent Rule 3-6(a), they disagree about the point in the litigation from which foreseeability is assessed. Sycamore contends that Local Patent Rule 3-6(a) gives a plaintiff the right to amend its infringement contentions following any claim construction order if the construction adopted by the court was unforeseeable "at the time the original infringement contentions were served." Dkt. No. 552, at 2 (quoting <u>Azure Networks</u>, 2012 WL 12919538, at *2). The defendants argue that a plaintiff is permitted to amend its infringement contentions only when the court's construction was unexpected at the time of the parties' claim construction briefing. Dkt. No. 561, at 12 (collecting cases).

The great weight of authority in this district supports the defendants' position. For example, in <u>Finisar</u>, Judge Clark denied a defendant's motion for leave to amend its invalidity contentions because the defendant "did not adequately explain how the court's definition of any of the terms in dispute was so surprising, or differed so greatly from the proposals made by the parties." 424 F. Supp. 2d at 901. Judge Clark explained:

> A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new invalidity defenses to meet claims of infringement. In the first place, courts seldom simply adopt the construction of one party or the other. Secondly, accepting such an argument would encourage parties to file narrow proposed constructions with an eye towards hiding important prior art until shortly before trial. Finally, one of the goals of the Federal Rules of Procedure and the Local Patent Rules is to speed up the litigation process and make it less expensive.

<u>Id.</u>; <u>see also</u> <u>Nike</u>, 479 F. Supp. 2d at 667-68 (applying the same standard to a plaintiff's request to amend its infringement contentions under Local Patent Rule 3-6(a)(1)).

Numerous Eastern District decisions have followed suit in cases involving infringement or invalidity contentions. In <u>Patent Harbor, LLC v. Audiovox Corp.</u>, 6:10-cv-607, Dkt. No. 477 (E.D. Tex. Mar. 30, 2012), Judge Love held that foreseeability is measured from the time of the parties' claim construction briefing. In that case, the court denied the defendants the opportunity to amend their invalidity contentions under Local Patent Rule 3-6(a) because the defendants did not "show that the Court's construction was so different from the parties' proposed constructions that amending their ICs is necessary." <u>Id.</u> at 5.

In <u>Saffran v. Boston Scientific Corp.</u>, No. 2:05-cv-547, Dkt. No. 143 (E.D. Tex. Jan. 28, 2008), Judge Ward granted a plaintiff's motion to strike the defendant's amended invalidity contentions in similar circumstances. The defendant in that case served its invalidity contentions pursuant to Local Patent Rule 3-6(a), but the court held that the court's claim constructions were foreseeable because the court had largely adopted constructions proposed by the parties. <u>Id.</u> at 4-6. The defendant had filed its invalidity contention on December 4, 2006, and the parties exchanged their claim construction positions on March 28, 2007. <u>Id.</u> at 1. Judge Ward issued his claim construction order on September 28, 2007, and the defendant sought to amend its invalidity contentions shortly thereafter under Local Patent Rule 3-6(a). <u>Id.</u> at 1-2. In striking the amended invalidity contentions, Judge Ward noted that the defendant had known about the plaintiff's proposed claim constructions "since March 28, 2007, but it did not, however, seek to amend [its invalidity contentions] when it learned of that position." <u>Id.</u> at 6. Because Judge Ward "essentially adopted [the plaintiff's] proposed structure for the material release means elements," he ruled that the defendant could not "argue in good faith that the court's construction . . . was unexpected in these circumstances." <u>Id.</u>

In <u>Parallel Networks</u>, Judge Davis noted that Local Patent Rule 3-6(a) is "inapplicable" where the Court's claim construction was "hardly unanticipated" because the patentee "titled an entire section and expended two pages of its reply in support of its opening claim construction discussing" the construction at issue. 2011 WL 13098299, at *2. As a result, the court held, the patentee "cannot now plausibly argue that the Court invented the concept of a 'single transmission' out of whole cloth." <u>Id.</u> The court concluded: "While [the patentee] has every right to disagree with the Court's construction on appeal, it should not be allowed to twist the Court's construction in a transparent attempt to shift to a new infringement theory because of that disagreement." <u>Id.</u>

And in <u>Intel Corp. v. Commonwealth Science and Industrial Research Organisation</u>, No. 6:06-cv-551, 2009 WL 10676780 (E.D. Tex. Apr. 9, 2009), a case with facts remarkably similar to this one, Judge Davis identified latent claim construction issues in the parties' summary judgment motions and conducted supplemental claim construction. <u>Id.</u> at *1. Following claim construction, in which the court adopted one party's proposed construction, the opposing parties, invoking Local Patent Rule 3-6, sought a continuance to revise their expert opinions and their non-infringement and invalidity contentions in light of the supplemental claim construction. <u>Id.</u> at *6. Judge Davis denied the request: "It was incumbent upon [the opposing parties] to recognize, even before filing their response to [the] motion for summary judgment, that [they] had differing views concerning the scope of the asserted claims." <u>Id.</u> at 7. The court noted that neither the "existence of this dispute" nor "the Court's supplemental construction" was "surprising," given that "the Court merely adopted [one party's] position and incorporated it into the claim construction." <u>Id.</u>

Judges in this district have recited the same standard in numerous other cases, noting that the court's adoption of an opposing party's claim construction is not sufficient to support the movant's claim that it was surprised by the court's ruling. See Cell & Network Selection, 2014 WL 10727108, at *2 (A party may amend "in light of an unexpected claim construction by the Court. . . . [T]he Court's adoption of another[] party['s] construction alone is not sufficient to support a party's good faith belief it was surprised by the Court's ruling." (quoting VirnetX, 2012 WL 12546881, at *3)); Acqis, 2011 WL 13137344, at *2 ("IBM should have prepared for the possibility that the Court would not adopt its proposed limitation. A party cannot argue that merely because its proposed claim construction is not adopted by the Court, it is surprised and must prepare new invalidity contentions."); Ameranth, Inc. v. Menusoft Sys. Corp., No. 2:07-cv-271, 2010 WL 11530914, at *1 (E.D. Tex. Aug. 23, 2010) ("The Court fails to see how Ameranth could be caught off guard by the claim construction order. Since at least September 18, 2009, the defendants have asserted that the independent claims require Web capability."); MASS Engineered Design, Inc. v. Ergotron, Inc., 250 F.R.D. 284, 286 (E.D. Tex. 2008) ("Equally unavailing is MASS's explanation that it did not anticipate the Court's constructions. This is not a situation where the Court issued constructions that greatly differed from what the parties proposed. Rather, the Court adopted all of DMLP's proposed constructions, without major modification. Thus, MASS was on notice of the possibility of the Court's constructions from at least the time MASS proposed its constructions. MASS's 'wait-and-see' approach to claim construction is antithetical to the Local Patent Rules.").

In support of its contrary position, Sycamore cites a single case, Azure Networks. In that case, the plaintiffs moved pursuant to Local Patent Rule 3-6(b) to amend their infringement contentions. 2012 WL 12919538, at *1. As the plaintiffs explained in their opening brief on the

motion, the amendment was filed in response to "recent disclosure of [the defendants'] unduly narrow constructions coupled with this Court's prior warnings restricting a party's ability to amend infringement contention based on the Court's adoption of foreseeable constructions." Azure Networks, No. 6:11-cv-139, Dkt. No. 235, at 5 (E.D. Tex. Oct. 12, 2012). Local Patent Rule 3-6(a) was inapplicable, as the court had not yet issued a claim construction order; rather, the plaintiffs were concerned that they would not be able to amend their infringement contentions if the court adopted the defendants' construction because the court's construction would have been foreseeable. Judge Love denied the motion without prejudice as "premature" on the ground that "[t]he better course is to wait until the Court has adopted a final construction that would give the party a basis to move on that account." Azure Networks, 2012 WL 12919538, at *2. Judge Love then stated, in a passage that Sycamore has seized on, that "[f]oreseeability of the construction of a term relates to whether the construction was foreseeable at the time the original infringement contentions were served" and that the plaintiffs would be able to amend their original infringement contentions if the court adopted the defendants' claim construction. Id.

That language was dictum in Azure Networks, since the case involved Local Patent Rule 3-6(b), not Rule 3-6(a). Moreover, that statement has not been followed in other cases, and it appears to be inconsistent with all of the other Eastern District decisions the Court has located addressing this issue, including a decision by the same judge in the Patent Harbor case. In that case, the court cited Judge Clark's opinion in Nike for the proposition that a party "cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement [or invalidity] contentions." No. 6:10-cv-607, Dkt. No. 477, at 5 (E.D. Tex. Mar. 30, 2012) (alteration in original) (quoting Nike, 479 F. Supp.

2d at 667-68). The court then denied the motion to amend the invalidity contentions, ruling that parties seeking to amend their contentions under Local Patent Rule 3-6(a)(2) based on a claim construction order "must show that the Court's construction was so different from the parties' proposed constructions that amending their ICs is necessary." Id.

Based on the interpretation of the Local Patent Rules adopted and applied by the judges of this district, the Court concludes that under Local Patent Rule 3-6(a), foreseeability is determined from the time of the claim construction briefing, rather than from the time the original infringement contentions are served. Under that standard, it is clear that Sycamore's attempt to amend its infringement contentions at this time is improper.

B

Sycamore's original infringement contentions, dated September 12, 2016, identified Figure 8-2 of Accused Mappings A and B and Figure B.5 of Accused Mappings C and D as the evidence of infringement of claims 1 and 8. See Dkt. No. 561-1, at A-6 to A-8, C-8, C-10, D-8, D-10 (Sycamore's initial infringement contentions against AT&T). For each of those contentions, the accused figure shows the flag bit (the "data indicator") and the 64-bit field (the "data words") in a single horizontal row. That definition is consistent with Figure 6 of the '405 patent, which shows the same type of encoding scheme with the bits labeled sequentially from bit 1 to bit 65.

AT&T's March 28, 2017, interrogatory response stated that it did not infringe the '405 patent because the data indicator and data words "are never 'combined' in a single stream of encoded information." Dkt. No. 168-2, at 9. That interrogatory response made Sycamore aware that the construction of the phrase "combined . . . to generate an encoded information stream" was in issue. At that point, Sycamore could have sought a claim construction of that term or

sought to amend its infringement contentions under Local Patent Rule 3-6(b).  Instead, Sycamore

responded solely through an interrogatory response, dated June 6, 2017.  See Dkt. No. 168-4.

Even when notified by AT&T's counsel, on two separate occasions, that Sycamore was

obligated to seek leave of court to amend its infringement contentions, see Dkt. No. 168-5; Dkt.

No. 168-7, Sycamore refused to do so.  Instead, Sycamore stood on its position that it could

properly amend its infringement contentions by email and thereby preserve the right to present a

doctrine of equivalents theory at trial.  See Dkt. No. 168-6.

In its October 10, 2017, order, the Court rejected Sycamore's position regarding the

adequacy of its infringement contentions on the doctrine of equivalents.  From that point on,

Sycamore proceeded solely on a theory of literal infringement.

The Court in its February 16, 2018, order characterized the dispositive issue of whether

the data indicator and data words were generated in a physically contiguous stream as an issue of

claim scope rather than infringement.  That theory of non-infringement, however, was asserted

by AT&T as early as March 28, 2017, more than seven months before the Court requested claim

construction briefs on the term "encoded information stream."  See Dkt. No. 389.

The doctrine of equivalents theory that Sycamore asserted in its June 2017 interrogatory

response is nearly identical to the doctrine of equivalents theory it now seeks to assert.[3]

---

[3] Compare Dkt. No. 168-4, at 8 (Sycamore interrogatory response dated June 6, 2017: "A person of ordinary skill in the art would have considered the difference between an encoded information stream that includes the data indicator and data words for a single information group, all collected together and an encoded information stream that includes data indicators for multiple information groups along with the associated data words, where the data indicators are collected together after all of the data words, to be insubstantial."), with Dkt. No. 556-1, at 8 (Supplemental Expert Report of Dr. Nettles, dated February 26, 2018: "A person of ordinary skill in the art would have considered the difference between an encoded information stream in which the data indicator and data words for an information group are physically continuous with each other to be insubstantially different from Figure 8-3 where the flag bit is physically separated in a fixed logical way and fixed physical distance from the remainder of its otherwise

Moreover, by September 15, 2017, in its response to AT&T's motion to strike, Sycamore recognized that AT&T's argument "depends on interpreting 'encoded data stream' to refer solely to one encoded group, rather than the entire superblock stream, and interpreting 'combining' to mean that the data indicator must be contiguous to the remaining 64 bits in the groups." Dkt. No. 159, at 4. Although Sycamore argued that "[t]his is not a natural interpretation of either claim term," id., it neither sought a contrary claim construction nor sought to amend its infringement contentions to add the doctrine of equivalents in response to AT&T's position.

Thus, Sycamore was aware of AT&T's position as to that issue for nearly a year before filing its current motion to amend its infringement contentions.[4] Even assuming that Sycamore could not have foreseen the Court's claim construction when Sycamore served its initial infringement contentions, Sycamore cannot in good faith contend that it was surprised by the Court's construction following AT&T's interrogatory, AT&T's motion to strike, the Court's order requesting supplemental claim construction briefing, and the defendants' position in their briefs on the issue. Consequently, the Court concludes that under the well-established rule in this district, Sycamore is not permitted to amend its infringement contentions under Local Patent Rule 3-6(a).

---

contiguous 64b/65b block (which actually contains the control information and data words from the corresponding information group).").

[4] Sycamore notes that, unlike AT&T, Level 3 did not raise the successful non-infringement theory until the last day of fact discovery, and CenturyLink never formally asserted that theory. Dkt. No. 552, at 6. However, because Sycamore's basic theory of infringement is the same against each defendant, the defendants joined in a single motion for summary judgment of non-infringement challenging that theory. See Dkt. No. 193. CenturyLink and Level 3 have thus been beneficiaries of AT&T's non-infringement strategy. With respect to the present motion to amend, Sycamore does not argue that CenturyLink and Level 3 are sufficiently differently positioned that they should be treated differently from AT&T. For that reason, and because the "unexpected or unforeseeable" claim construction analysis appears to be the same for all three sets of defendants, the Court treats all the defendants as one.

C

Sycamore argues that on occasion courts in this district have permitted plaintiffs to amend their infringement contentions even when the court adopts the opposing party's construction, rather than an unforeseen or unexpected construction.  Dkt. No. 563, at 2-3 (citing Azure Networks, 2012 WL 12919538, at *2, and VirnetX, 2012 WL 12546881, at *2).  Azure Networks, as discussed above, addressed Local Patent Rule 3-6(a) only in dictum, and the dictum in that opinion appears to be at odds with all the other cases from this district that address the issue.  VirnetX is consistent with the defendants' reading of the case law.  In VirnetX, Judge Davis noted that "[t]raditionally, the Court's adoption of another[] party['s] construction alone is not sufficient to support a party's good faith belief it was surprised by the Court's ruling."  2012 WL 12546881, at *3 (citing Nike, 479 F. Supp. 2d at 667).  In that case, however, Judge Davis found the traditional rule inapplicable, because VirnetX served its doctrine of equivalents theory well before the Markman hearing on the disputed claim term.  Id. at *3 & n.2.  Specifically, VirnetX had moved under Local Patent Rule 3-6(b) to amend its infringement contentions to include the doctrine of equivalents theory, VirnetX, Dkt. No. 214 (E.D. Tex. Jan. 31, 2012), which Judge Davis denied without prejudice to amend following the court's claim construction order, VirnetX, Dkt. No. 287 (E.D. Tex. May 16, 2012).

Unlike VirnetX, Sycamore did not avail itself of Local Patent Rule 3-6(b) when it decided to assert the doctrine of equivalents in June 2017.  Moreover, unlike in VirnetX, where the defendants had an opportunity to depose witnesses and make factual inquiries about VirnetX's doctrine of equivalents theory, see 2012 WL 12546881, at *4 n.4, the defendants in this case have had no such opportunity, because the Court granted AT&T's motion to strike, and

the defendants reasonably relied on the fact that the doctrine of equivalents theory had been removed from the case.

In SSL Services, another case relied on by Sycamore, Judge Gilstrap allowed an amendment to infringement contentions under Local Patent Rule 3-6(a), but only because he found that the claim construction in question was unexpected. See 2012 WL 12904284, at *2. Judge Gilstrap explained that Judge Ward, as Judge Gilstrap's predecessor in the case, had "adopted claim constructions that were not advocated by either party." Id. at *1. Judge Gilstrap concluded that the constructions adopted by Judge Ward "were sufficiently 'different' to justify amendment under the good faith standard of Local Patent Rule 3-6(a)(1)." Id. at *2. That case is inapplicable here, where the Court's claim construction was not surprising, but was consistent with the position taken by the defendants since March 2017.

This case is also unlike Juxtacomm-Texas Software, LLC v. Axway, Inc., No. 6:10-cv-11, 2012 WL 7637197 (E.D. Tex. July 5, 2012), in which Judge Davis allowed a plaintiff to amend its infringement contentions following a claim construction order that was issued only a few weeks before trial. See id. at *1. In that case, the claim construction hearing was held on May 24, 2011, and the claim construction order was not issued until December 2, 2011. In a motions hearing on December 7, 2011, Judge Davis granted the plaintiff's oral motion to amend under Local Patent Rule 3-6(a), explaining that "the Court didn't do what the plaintiff believed the Court was going to do," and that the prejudice to the plaintiff was "really compounded in this case by the fact that [the court] was so slow in getting out the Markman opinion." Juxtacomm-Texas Software, Dkt. No. 1095, at 7:21-8:2. Although jury selection was scheduled to begin on January 3, 2012, the court had not yet addressed the party's summary judgment motions and a number of depositions, including of the plaintiff's damages expert and invalidity expert, had not

yet occurred.  See id. at 10:22-25.  Given that posture, Judge Davis decided that the best course was to vacate the trial date, to order the parties to attend mediation, and to entertain additional summary judgment motions.  See Juxtacomm-Texas Software, 2012 WL 7637197, at *1.  The circumstances of that case are quite different from those of the instant case, in which Sycamore's motion to add a doctrine of equivalents infringement theory comes after the completion of discovery, after the resolution of all dispositive pretrial motions, and after Sycamore has been on notice of the defendants' non-infringement theory for nearly a year.

D

The Local Patent Rules are "designed to require parties to crystalize their theories of the case and to prevent a 'shifting sands' approach to patent litigation."  Motorola, Inc. v. Analog Devices, Inc., No. 1:03-cv-131, 2004 WL 5633735, at *1 (E.D. Tex. Apr. 8, 2004); see also Realtime Data, LLC v. Actian Corp., No. 6:15-cv-463, 2016 WL 9340797, at *2 (E.D. Tex. Aug. 11, 2016) ("[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond." (alteration in original) (quoting Connectel, LLC v. Cisco Sys., Inc., 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005))).  And courts in this district have been clear that Local Patent Rule 3-6 is meant to prevent amendments of the nature proposed by Sycamore here—that is, introducing new theories of infringement on the eve of trial.  See SSL Servs., 2012 WL 12904284, at *2 ("The rule, however, does not allow parties to file amended infringement contentions simply because a claim construction order has been issued.  Rather, the right to amend is subject to the Court's dut[y] to protect parties from unfair prejudice through 'eleventh-hour alterations.'" (quoting Nike, 479 F.

Supp. 2d at 668)).  Having known about the issue of claim scope regarding the term "encoded information stream" since at least March 2017, but having not moved to amend its infringement contentions during the ensuing year, Sycamore cannot now be allowed to assert a new theory of infringement after all discovery has been completed and all pretrial proceedings have been completed.[5]

Sycamore makes much of the fact that the Court treated the dispute between the parties regarding the "encoded information stream" limitation as a claim construction issue rather than a factual question.  First, however, the Court's action could not have come as a surprise to Sycamore, as Sycamore identified this issue as a claim construction issue as early as September 15, 2017.  Dkt. No. 159, at 4.  Regardless, for purposes of the disposition of the case, that distinction does not matter.  Whether the Court treated the issue as a matter of claim construction

---

[5] For the first time in its reply brief, Sycamore raises a new argument and cites new evidence regarding the definition of the term "block."  See Dkt. No. 563, at 4 n.9; Dkt. No. 563-1 (evidence of dictionary definitions of the term "block").  This evidence appears to be directed to the distinction drawn in the Court's memorandum order and opinion between "stream," which the Court construed to require physical contiguity, and "block," which is a term used in the accused standards, in Dr. Gorshe's White Papers, and in the manufacturer specification sheets and about which the Court stated "there is no evidence that the term 'block' must be given the same construction" as "stream."  See Dkt. No. 551, at 22 n.4; see also id. at 18-28.  In the first place, however, the Court did not construe the term "block," which does not appear in the patent, but merely recognized the absence of evidence that the term satisfies the Court's construction of "encoded information stream."  Second, this newly raised argument and evidence is immaterial to the question of whether Sycamore has a good faith basis to amend its infringement contentions under the Local Patent Rules.  Third, even if the issue had been properly raised at summary judgment or in a motion for reconsideration, Sycamore's evidence about the meaning of the term "block" would not be sufficient to satisfy Sycamore's burden under Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321 (Fed. Cir. 2010), to show that the accused standards, when implemented, necessarily generate an encoded information stream that contains the data indicator and data words in physical contiguity.  Finally, Sycamore's argument appears to be self-contradictory:  Although Sycamore argues that it still understands both "encoded information stream" and "block" to "require only a logical relationship of elements," Dkt. No. 563, at 5 n.9, it cites dictionaries that suggest that "block" might require contiguity, Dkt. No. 563-1.  Sycamore's footnote discussion of the term "block" thus provides no basis to allow Sycamore to amend its infringement contentions.

or a factual dispute, the Court's summary judgment disposition would be the same. The short of the matter is that Sycamore did not present evidence from which a jury could find that the data indicator and data words in the accused devices were part of the same encoded information stream, and thus there was no jury question presented as to the issue of literal infringement. Of course, if the Court had characterized its ruling as based on a factual issue rather than an issue of claim construction, Sycamore would have no ground for contending that it is entitled to amend its infringement contentions at this juncture. Its position should not be any stronger merely because the Court concluded that the defect in Sycamore's case is properly characterized as stemming from a claim construction issue rather than factual insufficiency.

In one sense, Sycamore's position is sympathetic. In its original infringement contentions, it referred to the doctrine of equivalents; it sought to amend its infringement contentions by adding a reference to the doctrine of equivalents through its interrogatory responses in June 2017; it resisted the defendants' motion to strike that effort to amend, but was unsuccessful; and after the entry of summary judgment of no literal infringement, it has again sought to raise the doctrine of equivalents. So one can fairly say that Sycamore's effort to raise the doctrine of equivalents is not an eleventh-hour ploy.

On the other hand, Sycamore has repeatedly failed to employ the mechanisms provided by the Local Patent Rules to protect its interests. In its initial infringement contentions, it made a merely contingent, boilerplate allusion to the doctrine of equivalents, stating only that it was reserving its rights to assert the doctrine at some point in the future. As the Court noted in its October 10, 2017, order, such a boilerplate and contingent reference to the doctrine of equivalents does not constitute a valid infringement contention under well settled Eastern District case law. Next, Sycamore sought to amend its infringement contentions by an interrogatory

response and then by email, which is not the proper procedure under Local Patent Rule 3-6(b). Even after the defendants advised Sycamore—twice—that it needed to obtain leave of court to amend its infringement contentions, Sycamore failed to do so. And even when the defendants moved to strike its doctrine of equivalents claim, Sycamore did not move to amend its infringement contentions. As of October 2017, then, the doctrine of equivalents claim was out of the case. When, following the Court's February 2018 claim construction order, Sycamore again sought to invoke the doctrine of equivalents, the question posed to the Court was whether the Court's February 2018 claim construction was unexpected. In light of the fact that, since March 2017, the defendants have adhered to the same theory of non-infringement that the Court adopted in its claim construction, the Court concludes that its claim construction was not unexpected. Thus, Sycamore's situation may be unfortunate, but it is a product of its own failure to follow the rules.

## CONCLUSION

"The rules have teeth. Their design is not punitive, but they put structure to litigation that otherwise would be unmanageable." Intergraph Corp. v. Intel Corp., No. 2:01-cv-160, 2002 WL 34534505, at *2 (E.D. Tex. June 18, 2002) (denying request to amend invalidity contentions served after expert discovery had closed and after the deadline for submission of the joint pretrial order). In this case, by failing to comply with the Local Patent Rules, Sycamore has forfeited its opportunity to assert the doctrine of equivalents.

Accordingly, Sycamore's motion seeking a declaration that it may amend its infringement contentions, Dkt. No. 552, is DENIED. Sycamore's motion seeking leave to serve a supplemental expert report relating to its amended infringement contentions, Dkt. No. 556, is therefore DENIED AS MOOT.

As no party has filed a motion for reconsideration of the Court's previous order granting summary judgment, the Court understands that it is the parties' wish that the Court enter a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) on Sycamore's infringement claims against all remaining defendants and stay proceedings on the defendants' counterclaims to permit Sycamore to appeal the Court's claim construction and summary judgment decisions.  See Dkt. No. 554.  Accordingly, by April 20, 2018, the parties shall file a joint proposed order of judgment.  The parties should include in their submission a statement as to the reasons that the Court should find that there is "no just reason for delay" and that the Court should enter a final judgment as to fewer than all the claims asserted in this case.  See Fed. R. Civ. P. 54(b); Carotek, Inc. v. Kobayashi Ventures, L.L.C., 409 F. App'x 329, 331 (Fed. Cir. 2010).

IT IS SO ORDERED.

SIGNED this 6th day of April, 2018.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE